AGRICULTURAL INSURANCE COMPANY, Plaintiff, *v.* A. ROTHBLUM, INC., Defendant.

Supreme Court, New York County, May 23, 1933.

*Single & Hill* [*Paul D. Compton* and *W. Harry Stromenger* of counsel], for the plaintiff.

*Engel Brothers* [*Morris Hershon* of counsel], for the defendant.

COLLINS, J. The plaintiff insurance company issued a " Jewelers' Block Policy " to Harry Neumark. The policy was for $100,000 and covered, among other property, diamonds while in Neumark's custody or possession or in that of others on memorandum. Neumark delivered diamonds to the defendant on memorandum. While in defendant's possession they were lost. Thereupon the plaintiff paid Neumark $12,000 in settlement of the loss. The plaintiff now maintains that it made the payment to Neumark " pursuant to the terms and conditions of the " policy and that by virtue thereof it became subrogated to the rights and claims of Neumark against the defendant stemming from the loss. This action asserts those rights and seeks to enforce those claims. The essential facts are free from controversy. The defendant offered no proof, insisting that the plaintiff failed to establish a *prima facie* case. The policy " covers *loss* of and/or damage to the  *  *  * property or any part thereof *arising from any cause whatsoever* " (italics mine), except loss or damage ensuing from about a dozen enumerated causes. Neumark delivered the diamonds to the defendant on memorandum " for examination, and they remained the property of Neumark, and were to be returned on demand, and they were also delivered at the risk of the Rothblum [defendant] Company." Admittedly, the diamonds were " lost before they were returned to Neumark." At the time of such loss Neumark was the president of the defendant corporation. The diamonds were of the fair and reasonable value of $24,000. The policy stipulates that the amount of the loss may be determined " by agreement between the assured and the company." The loss having been ascertained to be $12,000, the plaintiff, as subrogee, demands this sum from the defendant. That the defendant was liable to Neumark for the loss is obvious. Its obligation was to return the diamonds on demand and when it omitted to do so an action in Neumark's favor against the defendant arose. (*Zaidens* v. *Salter*, 142 Misc. 439; *Harms* v. *City of N. Y.*, 69 id. 315.) The defendant,

however, insists that no right of subrogation exists here because, it contends, the payment to Neumark was voluntary, instead of compulsory, and, therefore, not pursuant to the provisions of the policy. Of course if the plaintiff was not compelled to make payment, but did so voluntarily, its right to subrogation would not arise. (*Koehler* v. *Hughes*, 148 N. Y. 507, 511; *Kiendl* v. *Cochrane*, 153 App. Div. 802, 803; *First National Bank of Ballston Spa* v. *Board of Supervisors*, 106 N. Y. 488, 494; *Gerseta Corporation* v. *Equitable Trust Co.*, 241 id. 418, 425.) Hence, the single issue here presented is whether the payment by the plaintiff to Neumark was compelled by the terms of the policy or whether it was voluntary. The solution lies in the answer to the question whether Neumark, in the event he sued the insurer (plaintiff here) would make out a *prima facie* case by showing what has been shown here, or whether he would have to go further and prove, as the defendant insists, the *manner* of the loss, *i. e.*, that the loss did not come within the excepted causes. The defendant both misreads and misinterprets the verbiage of the policy. The coverage is not against *theft*. It is appreciably broader. The " policy covers loss of and/or damage to the * * * property or any part thereof arising from any cause whatsoever," excepting the enumerated causes. If the insurance was limited to loss by theft, the plaintiff would have to prove the loss by that method, just as in the case of a policy against loss by fire the fire must be shown. (*Providence Washington Ins. Co.* v. *Youmans*, 82 Misc. 433.) These exceptions are conditions subsequent rather than conditions precedent. " The purpose of the exception in normal situations is simple and obvious. It is inserted in the contract for the purpose of withdrawing from the coverage of the policy, as delimited by the general language describing the risk assumed, some specific risk which the underwriter declares himself unwilling to undertake * * * the occurrence of an excepted peril * * * does not in the least affect the binding force of the contract." (Vance Ins. [2d ed.] pp. 405, 406.) In an action by the insured against the insurer the onus would not be upon the insured to allege and prove, as a condition precedent, that the loss was not occasioned by the specified exceptions. Rather it would be incumbent upon the insurer to allege and prove, as a condition subsequent, that the loss arose from one of the excepted causes. (*Van Valkenburgh* v. *Am. Popular Life Ins. Co.*, 70 N. Y. 605; *O'Connell* v. *New Jersey Fidelity & Plate Glass Ins. Co.*, 201 App. Div. 117; affd., 235 N. Y. 583.) The cases which the defendant leans upon for support do not sustain its position. They do not hold that where the coverage is so comprehensive as to embrace " loss of and/or damage to the * * * property * * *

arising from any cause whatsoever," with certain enumerated exceptions, the plaintiff, as part of his case, is required to take himself without the exceptions. Paragraph fifth of the complaint discloses, and the answer admits, the theory of the plaintiff's case to be loss, and not loss *by theft*. Since the evidence adduced in plaintiff's behalf would have made out a *prima facie* case in an action by Neumark against the insurer, it must be held that the payment was compulsory instead of voluntary. Consequently a verdict is directed for the plaintiff for $12,000, with interest from June 10, 1931. Exceptions to defendant. Fifteen days' stay and thirty days to make a case.