## Gardocki, Appellant, v. Polish National Alliance of United States of America.

Argued March 13, 1940.

Before Keller, P. J., Cunningham, Baldrige, Parker, Rhodes and Hirt, JJ.

*J. Russel Gibbons*, with him *Leonard A. Talone*, for appellant.

*Harry M. Sablosky*, with him *Maxwell Strawbridge*, for appellee.

OPINION BY CUNNINGHAM, J., July 19, 1940:

On September 6, 1935, Kamilia Gardocki, upon her written application, dated August 3, 1935, and after a medical examination, was accepted as a member of the defendant association. Thereupon an "Ordinary Life Certificate," in the amount of $5,000, was issued to her in which she named her husband, Wladyslaw Gardocki, plaintiff below, as the beneficiary.

Within two years after the date of the issuing of the certificate, namely, on December 24, 1936, the death of the insured occurred and the beneficiary brought suit in the court below for the full amount of the certificate. The insurer defended, except as to the amount of the premiums it had received, admittedly $141, upon two grounds:

First, that the insured had warranted in her application she was not "using intoxicants to excess" at the time it was made, whereas, in fact, she had been and was then using them in excessive amounts. The question and answer, as they appear upon the application, read: "Par. 7: Are you using intoxicants to excess? No."

Second, that the circumstances of the insured's death brought it within the following exception in the insurance contract: "(d) In all cases of death due to

excessive use of alcohol whether done deliberately or in a state of irresponsibility of such person who did not belong to the Polish National Alliance for the full term of two (2) years no death benefit shall be paid, and the beneficiaries can receive only the sum paid in on such benefit, and nothing more."

The trial resulted in a verdict for the plaintiff beneficiary for the amount of the premiums only. His motions for judgment n. o. v., or a new trial, were denied and he now appeals from the judgment upon the verdict.

The only question of law properly before us upon this appeal is whether the trial judge was justified, under all the evidence, in submitting both issues to the jury. In connection with the question and answer relative to the excessive use of intoxicants, it is to be noted that the insured, as a part of her application, certified: "I have verified each of the above answers and statements and warrant them to be full and true and agree that they shall be a condition precedent to, and form a basis of any binding contract to be made by and between myself and the Polish National Alliance of the United States of North America and are offered by me as a consideration for said contract, which they shall form a part; I agree that they shall be a basis of my Benefit Certificate and that they and the Constitution and By-Laws of said Alliance form one entire contract; I agree that if any of my statements are not literally true, . . . . . . my Benefit Certificate shall be void."

1. As to warranties it is settled that the insurer may avoid liability by showing the falsity of statements material to the risk, irrespective of insured's knowledge of their falsity or his good faith in making them: *Evans v. Penn Mutual Life Ins. Co.*, 322 Pa. 547, 560, 186 A. 133.

Defendant of course had the burden of establishing the falsity of the answer as to excessive use of intoxicants. Whether or not the insured was so using them

when she applied for membership in the defendant organization was, to some extent at least, a matter of opinion. As stated in 4 Couch, Cyclopedia of Ins. Law, Section 884-c, page 2919: "So, it is said that, in the absence of any standard of measurement, the question whether or not an insured used intoxicants to 'excess' is for the jury." In *McEwen v. N. Y. Life Ins. Co.*, 42 Calif. App. 133, 183 Pac. 373, the California court, reversing a judgment on a verdict for the beneficiary on other grounds, held that the truth or falsity of the insured's answer as to the use of alcoholic liquors "to excess" was for the jury, stating (page 377 of 183 Pac.) : "The meaning of the word 'excess' as here used, is largely a matter of opinion, depending upon the capacity of the individual and liberality of view entertained upon the subject by the individual, whose opinion might again be governed by the time, place and occasion, [citing cases]. In the absence of any standard of measurement, the question is one of fact to be determined by the jurors, whose conclusion, as stated, would depend largely upon their views as to what constitutes excess in the use thereof. It cannot be determined upon the quantity used, because of the fact that an amount which might affect one individual would not be noticeable upon another."

There was ample evidence to support a finding insured was using intoxicants to excess at or about the time she applied for insurance with defendant. At the time of her application, August 3, 1935, she was thirty-seven years of age and resided at 358 E. Elm Street, Conshohocken.

Defendant produced eight witnesses, mostly neighbors and relatives of the insured, who knew her at the time she applied for membership and were acquainted with her habits before and after that time. These witnesses, including insured's sister, niece and son, testified that for a period of two years or more prior to her death "she got drunk pretty bad right along," was drunk one

week and sober the next, was very drunk and dirty, and had to be washed and dressed. Her nineteen year old son, who lived at home with his mother, testified she "drank heavily" during her last two years,—was drunk ten days at a time, sobered up two days and then started all over again.

Plaintiff objected to testimony showing insured was addicted to the use of alcohol at any time except upon the exact date of her application. The trial judge limited the evidence of her use of intoxicants to a period of two years preceding her death, which would be approximately eight months before her application. We think this was a reasonable limitation under all the circumstances. While the question was couched in the present tense, the fact that excessive use of intoxicants involves to some degree the element of habit would justify some latitude in the admission of testimony on this issue. In 1 Wigmore, (3d. Ed. 1940), Section 96, dealing with the topic "Habit of Intemperance" it is said: "If indeed a steady practice of intoxication can be shown, it would be equally probative." Again, the same witnesses who testified to insured's practices relative to the use of intoxicants about the time she applied for insurance, also made it clear her habit in this regard was progressive and continuous down to the time of her death. We are not persuaded plaintiff was prejudiced, or any reversible error committed, by the rulings of the trial judge upon the evidence relating to this branch of the case.

Plaintiff, by way of rebuttal, produced eight or ten friends of deceased, many of whom lived in Manayunk or Philadelphia, who testified the insured did not drink to excess. The physician who examined the insured for the defendant also said he discovered no signs of the habitual use of alcohol at the time. The conflict in the testimony thus created was necessarily for the jury's consideration.

2. Our inquiry upon the second branch of the case is

whether there was evidence from which a jury could be permitted, under established principles of law, to find that insured's death was due to the excessive use of alcohol?

This defense was an affirmative one and the burden was upon defendant to prove the death was due to a cause specifically excepted in the policy: *Bowers v. Great Eastern Casualty Co.,* 260 Pa. 147, 103 A. 536; *Zenner v. Goetz* (Travelers Ind. Co. Aplnt.), 324 Pa. 432, 435, 188 A. 124; *Guise v. N. Y. Life Ins. Co.,* 127 Pa. Superior Ct. 127, 137, 191 A. 626; *Petitt v. Most E. A. of A. D. Mut. P.,* 73 Pa. Superior Ct. 227. In the case last cited the policy provided the defendant order should not be liable "if ...... death shall be caused by the use of intoxicating liquors." Affirming the charge of the trial judge on this point, HEAD, J., stated (p. 230): "The defense set up was an affirmative one and the burden was on the defendant to establish it ......"

The insurer contends it met this burden by proof of the following circumstances surrounding the death of the insured: For at least two weeks before her death she had been on a continuous drunk, day and night. This fact was testified to by at least eight witnesses, including insured's sister, who lived next door, and insured's son. A neighbor, who had not known the insured previously, found her four days before her death lying "paralyzed" drunk in the gutter, with her shoes wet and stockings off. This witness picked her up and helped her home.

On the night immediately preceding her death, her son stated she came in around midnight "very drunk." At six o'clock in the morning he found her sitting on the floor of the cellar, bleeding from a wound on the left side of her head with blood clotted all over her. There was a pool of blood a yard square on the cellar floor at the bottom of the stairway. With the aid of his aunt, he took her upstairs and placed her on a chair in the kitchen.

Dr. Hargreaves was promptly called. He sutured a two inch laceration of her scalp above the left ear, bandaged her head and directed she be put to bed. At the time he treated her she was, in his opinion, "decidedly drunk." A county detective, called in at 9:30 a. m. that same morning, found the dead body of insured lying on the dining room floor.

The coroner's physician, Dr. Simpson, performed an autopsy that afternoon. Upon opening the body a "distinct odor of alcohol" was noticeable. In addition to the wound in the head, there were bruises on the right forehead, right arm, lower right jaw and other parts of the body. The witness was of opinion that the immediate cause of insured's death was "a cerebral hemorrhage due to trauma of the left side of the head."

This evidence clearly supports the inference that the insured fell down the cellar stairs and received a fatal blow on the head. But the question remains whether it also sufficiently supports a further inference that her fall and the resulting injury to her head were "due to [the] excessive use of alcohol?"

The problem here is not essentially different from that arising in any civil case where circumstantial evidence is relied upon to justify the ultimate and essential inference. As Mr. Justice MAXEY, speaking of the quality of proof necessary to establish, by circumstantial evidence, an accidental death exclusive of all other causes, stated in *De Reeder et al. v. Travelers Ins. Co.*, 329 Pa. 328, 198 A. 45, (at page 334) : "...... so in a *civil* case the evidence of facts and circumstances on which [a party] relies, and the inferences logically deducible therefrom, must so *preponderate* in favor of the basic proposition he is seeking to establish as to exclude any equally well supported belief in any inconsistent proposition." (Italics supplied.)

Whether the evidence is sufficient in its entirety to establish the necessary proposition depends, of course, upon the entire body of circumstantial evidence pro-

duced, together with the type of inference sought to be drawn from the proven evidentiary facts. Here, as stated in *Petitt v. Most E. A. of A. O. Mut. P.,* supra, it should appear that the intoxication relied upon existed "so recently prior to the death and [had] such an obvious connection with it, that death may be clearly traceable to it and fairly said to have been produced by it."

Defendant's evidence, if believed, showed the insured had been continuously and so decidedly drunk as to lose control of her faculties for two weeks before her death; that she was "very drunk" at the midnight preceding her death and "decidedly drunk" when found, wounded and bleeding, in the cellar the next morning.

It was not a mere guess or conjecture for the jury to say, under this evidence, that the loss of her normal faculties and control over her movements through intoxication caused her to fall and fatally injure her head. The evidence, as we read it, preponderates in favor of that conclusion. Compare *Kelly v. Prudential Ins. Co. of America,* 334 Pa. 143, 6 A. 2d 55.

We do not overlook the fact that the insurer had the burden of showing, under the provisions of this contract of insurance, that the insured's death was *due* to the excessive use of alcohol and not merely that she was *under the influence of intoxicating liquor* when it occurred—the extent of the burden in some of the cases cited by counsel.

Having in mind the principles of law to which we have referred, and upon consideration of all the evidence, we are of opinion the trial judge was warranted in submitting both branches of this case to the jury. The motion for judgment n. o. v. was therefore properly denied and we find no reversible trial error upon the record.

Judgment affirmed.