Julien BALOGH and Harriet Balogh, d/b/a Balogh's of Coral Gables, Plaintiffs,

v.

JEWELERS MUTUAL INSURANCE CO., a Wisconsin corporation, Defendant.

David R. BALOGH, Plaintiff,

v.

The WESTERN ASSURANCE CO., a Canadian corporation, Defendant and Third-party Plaintiff (Julien BALOGH and Harriet Balogh, d/b/a Balogh's of Coral Gables, Third-party Defendants).

David R. BALOGH, Plaintiff,

v.

PENNSYLVANIA LUMBERMENS MUTUAL INSURANCE COMPANY, Defendant and Third-party Plaintiff (Julien BALOGH, Third-party Defendant).

Civ. Nos. 7289–M, 7297–M, 7299–M.

United States District Court
S. D. Florida,
Miami Division.
Nov. 7, 1958.

Salley & Roman, Miami, Fla., for plaintiffs.

George J. Baya, Miami, Fla., for defendant Jewelers Mut. Ins. Co.

Smathers, Thompson & Dyer, Miami, Fla., for defendant Western Assur. Co.

Dixon, DeJarnette, Bradford & Williams, Miami, Fla., for defendant Pennsylvania Lumbermens Mut. Ins. Co.

LIEB, District Judge.

These three cases came on to be heard before the Court sitting without a jury, and the Court having heard the evidence, and having considered the arguments and briefs of counsel, now makes the following Findings of Fact and Conclusions of Law.

### Findings of Fact

1. Julien and Harriet Balogh, plaintiffs (Case No. 7289) and Third-party Defendants (Cases Nos. 7297, 7299), are husband and wife, residents of Dade County, Florida, engaged in the jewelry business under the name of Balogh's of Coral Gables.

2. David Balogh, plaintiff (Cases Nos. 7297, 7299) is a resident of Dade County, Florida, brother of Julien Balogh, engaged in the jewelry business in Miami Beach, Florida.

3. Jeweler's Mutual Insurance Company, defendant (Case No. 7289), is a Wisconsin corporation, doing business in Dade County, Florida.

4. Western Assurance Company, defendant (Case No. 7297), is a Canadian corporation doing business in Dade County, Florida.

5. Pennsylvania Lumbermens Mutual Insurance Company, defendant (Case No. 7299), is a Pennsylvania corporation doing business in Dade County, Florida.

6. Case No. 7289, Julien Balogh and Harriet Balogh d/b/a Balogh's of Coral Gables v. Jeweler's Mutual Insurance Company; Case No. 7297, David R.

Balogh v. Western Assurance Company v. Julien and Harriet Balogh d/b/a Balogh's of Coral Gables; Case No. 7299, David R. Balogh v. Pennsylvania Lumbermens Mutual Insurance Company v. Julien Balogh and Harriet Balogh, d/b/a Balogh's of Coral Gables were consolidated for trial purposes and were tried to the Court without a jury.

7. The amount in controversy in each case respectively exceeds $3,000 exclusive of interest and costs. These cases were commenced before July 25, 1958.

8. On November 17, 1955, Jeweler's Mutual Insurance Company, issued to Julien and Harriet Balogh its Jeweler's Block Policy No. JB9–3305, expiring one year from date, which provided that it insured against all risks of loss of or damage to the described property arising from any cause whatsoever except certain enumerated exceptions. The property covered is described as follows:

A. Jewelry and stock usual to the conduct of the assured's business, owned by the assured;

B. Property as above described delivered or entrusted to the assured by others who are not dealers in such property or otherwise engaged in the jewelry trade;

C. Property as above described, delivered or entrusted to the assured by others who are dealers in such property or otherwise engaged in the jewelry trade, but only to the extent of the assured's own actual interest therein because of money actually advanced thereon, or legal liability for loss of or damage thereto.

9. On September 27, 1955, Western Assurance Company issued to David R. Balogh its Jeweler's Block Policy No. 9752174 expiring one year from date, and which provided the identical coverage in the identical words as listed in finding 8.

10. On March 16, 1956, Pennsylvania Lumbermens Mutual Insurance Company issued to David R. Balogh its scheduled Property Floater Policy No. 19573, expiring three years from date and which provided that it insured the described property against all risks of loss or damage while in all situations, except certain listed exceptions. The property covered is stated to be all scheduled items, being the property of the insured and members of his or her family of the same household. Listed on the schedule (and the only item therein in which we are concerned) is:

"One emerald cut diamond ring, 4.12 K, platinum setting, with 2 baguettes. $6,500.00."

11. Plaintiffs Julien and Harriet Balogh had done business over the years with David Balogh, but the two businesses were run as separate proprietorships.

12. David and Julien had an oral agreement that David would consign merchandise to Julien on the same terms as to other consignees, but because of the family relationship they kept only informal notations of such consignments. The terms as testified to by the parties were that Julien was either to return the merchandise or pay for it. David's consignment slip, as do the other consignment slips figuring in this case, places the risk of loss from all hazards on the consignee.

13. On the evening of June 12, 1956, David R. Balogh, at Julien's request, entered his (David's) shop and obtained six diamond rings, which he (David) delivered on consignment to Julien at about 11:00 p. m. on the same date, taking therefor a signed receipt.

14. The six rings referred to in finding 13 were as follows:

1. Emerald cut diamond ring, perfect blue white, 4.12 K, sometimes referred to as Sallie Balogh's personal ring, consigned at a price of $6,500.

2. Emerald cut diamond ring, perfect blue white, 3.88 K, which David had on consignment from one Levy, consigned at a price of $3,500.

3. Round diamond ring, 5.5 K, which David had on consignment from one Frackman, consigned at a price of $2,118.

4. Round diamond, 2.00 K, off-color, which David had taken in trade, along with No. 6 below, from one Krone, consigned at a price of $900.

5. Round diamond, 4.65 K, which David had on consignment from Equitable, consigned at a price of $3,200.

6. Emerald cut diamond ring, 5.5 K, off-color, which David had taken, in trade, along with No. 4 above, from one Krone, consigned at a price of $2,500.

15. Ring No. 5 above was sold to and delivered to the vendee, one Mrs. Ableson, on June 18, 1956, and figures no further in this lawsuit.

16. The remaining five aforementioned rings were put in a ring box along with six rings Julien Balogh had by consignment from persons other than David Balogh, as follows:

1. Item No. 5268 on Equitable Diamond Co. Memorandum No. 4210 one diamond and emerald ring at consigned price of $1,150.

2. Item No. 6669 on Equitable Diamond Co. Memorandum No. 2463 one diamond and platinum ring at consigned price of $685.

3. Item A–316 on Equitable Diamond Co. Memorandum No. 2463 one diamond and platinum ring at consigned price of $850.

4. Item No. 9913 on Equitable Diamond Company Memorandum No. 2463 one diamond and platinum wedding band at consigned price of $125.

5. Item No. S–4803 on Equitable Diamond Company Memorandum No. 2463 one diamond and emerald ring at consigned price of $1,050.

6. Item No. 415 on Fagen & Stahl Memorandum one baguette wedding ring at consigned price of $390. This particular ring is not involved in this law suit.

17. Each of the rings involved in finding 16 was held by Julien Balogh on consignment memorandum the terms of which cast the risk of loss for any cause whatsoever upon the consignee, Julien Balogh.

18. Prior to June 18, the ring box mentioned in finding 16 was kept in an inner locked portion of Julien Balogh's safe, a safe-within-a-safe, as it were. Approximately on said date, and as a matter of convenience, said ring box was removed from the inner locked portion of the safe and put on a shelf in the safe proper.

19. The main doors of the safe were not kept locked during business hours although the doors were generally kept shut and the combination turned a few digits off the open setting.

20. On Monday, June 25th, in the early afternoon, it was noted that said ring box, presumably still containing said eleven rings was missing. A thorough search was made but the ring box and rings have never been found. The ring box was last seen about noon on the preceding Saturday, June 23rd, by Julien Balogh who had occasion to check its contents at that time.

21. In addition, on Friday, June 30, it was realized that a gold charm bracelet with one charm attached, as well as four unattached gold charms, all of which were known to have been in the repair box inside the safe on Saturday were missing and have not been discovered since. The cost to Julien Balogh of replacing the bracelet and attached charm was $85. The value of four unattached gold charms was $69.

22. There was no evidence of forcible entry, either of the store or of the safe, observed by anyone.

23. Both Harriet Balogh and Wilma Zapora, a former clerk of Julien Balogh but no longer connected with the plaintiffs in any way, testified that a man wearing a sweater and woolen suit, on a June day, attracted the attention of each of them, respectively, on Saturday afternoon, June 23rd, that the man remained in the store browsing for about 20–30 minutes, and on at least one occasion was

observed looking at merchandise on shelves in the vicinity of the safe. When questioned by Harriet Balogh the man gave the name of Harris and claimed to be an acquaintance of Julien Balogh.

24. On Tuesday, June 26, or thereabouts, Harriet Balogh and Wilma Zapora examined photographs of known jewel thieves and selected therefrom one they thought was the man "with the sweater." They were informed by Patrick Robinson, adjustor for defendant, Jeweler's, that the man's name was Harry Sitamore and that he was an internationally known jewel thief. Subsequently, in September of the same year, Harriet Balogh was called to and appeared at the Dade County Court House where she identified a man standing in the hallway as the man who had been in the store on Saturday, June 23rd, and was again informed that the said man was Harry Sitamore.

25. Plaintiffs, Julien and Harriet Balogh did not exercise reasonable care in protecting the said rings.

26. Since the rings were consigned to Julien by dealers, and Julien is legally liable under the consignments for the loss of the rings, such rings fall within the "property insured" provisions of the Jeweler's Mutual policy.

27. The charm bracelet and charms, having been left with Julien by the purchaser and owner thereof, who was not a dealer, fall within the provisions of the Jeweler's Mutual policy.

28. The five rings consigned by David to Julien, either belonging to him or having been consigned to David by dealers under terms casting risk of loss for all hazards on the consignee, are within the terms of the Western Assurance policy.

29. Sallie's ring, being owned by David, or a member of his household, and being scheduled, is within the terms of the Lumbermens policy.

30. Julien Balogh gave notice of the loss within several hours after it was discovered, by telephone directly to defendant, Jeweler's Mutual home office in Neenah, Wisconsin. Subsequently, one

Patrick Robinson investigated the loss, as adjustor for Jeweler's Mutual. Julien and Harriet Balogh and their employees cooperated fully with Robinson, and he took from them signed statements. He never requested from them any proofs of loss, nor did he ever intimate to them that there was anything further required of them before a recovery could be had.

31. David Balogh reported the loss of the one ring designated as Sallie Balogh's personal ring to Pennsylvania Lumbermens Mutual Insurance Company, to one Murray Sheldon, issuing agent, on July 23, 1956.

32. Plaintiffs, Julien and Harriet Balogh, did not at any time render to Jeweler's Mutual a proof of loss required by the policy to be filed within 60 days.

33. On September 26, 1956, Jeweler's Mutual denied liability in writing on the ground that the loss was within what was claimed to be one of the excepted risks, i. e. mysterious disappearance.

34. Plaintiff, David Balogh did not at any time render to Pennsylvania Lumbermens a proof of loss required by the policy to be filed within 90 days.

35. On October 24, 1956, Pennsylvania Lumbermens Mutual denied liability in writing, on the ground that said policy was no longer primary carrier on said ring.

### Discussion of the law to be applied to the facts.

There does not seem to be any great dispute about the facts, although the parties in each case disagree as to the inferences to be drawn therefrom and the legal significance thereof.

Various defenses have been raised by the respective defendants. Jeweler's Mutual, in voluminous pleadings, raises defenses based: 1. on the exceptions having to do with mysterious disappearance; 2. on the inventory clause; 3. on the clause limiting liability to the actual cash value or replacement cost; 4. on the other insurance clause; 5. on failure to file proofs of loss; 6. and on the ground

that the property is not properly covered by the policy.

Western Assurance in its answer to the suit brought against it by David Balogh has raised some of the same defenses, i. e. the exception having to do with mysterious disappearance, failure to maintain a detailed inventory, and other insurance. No special defense has been raised by third-party defendants, Julien and Harriet Balogh in this case.

Pennsylvania Lumbermens Mutual Insurance Co. in its defense of the suit brought against it by David Balogh has also raised some of the defenses raised by the other two defendants, i. e. other insurance, failure to submit proof of loss. Julien and Harriet Balogh as third-party defendants raise as special defense to the third-party action, the right of the third-party defendant to subrogation in view of the latter's denial of liability. This latter defense has not been urged except as a matter of pleading.

Considering the first defense—mysterious disappearance—raised by Jeweler's as a defense to the suit brought against it by Julien and Harriet Balogh, and by Western Assurance as a defense to the suit brought against it by David Balogh, we must begin with the proposition that this is not a theft policy. Plaintiffs in the respective suits are not required to show a theft before they are entitled to recover. The policy here involved is much broader and is of the type known as an "all-risk" policy. It is axiomatic that plaintiff must show that the loss falls within the risks insured against, but it is also axiomatic, that it is for the defendant to show that the loss was not due to one of the risks insured against but rather to an excepted cause. It would seem that all plaintiff need show in such a case is a loss, since losses from all causes are covered. Defendant, arguing that a mysterious disappearance is "any disappearance the circumstances of

which excite—and at the same time baffle—wonder or curiosity." attempts to distinguish between the classic cases of lost or misplaced property, and a case which is baffling and therefore a mysterious disappearance. Assuming that it has proved its point, at least in the first instance, defendant argues that plaintiff was therefore under the obligation to go forward and prove a theft, and, having failed to do so, cannot recover. As can be seen, defendant relies to a large extent on semantics. Under his theory, any loss, the exact cause of which could not be proved by at least a preponderance of the evidence, would automatically be classed as a mysterious disappearance, and recovery would be defeated unless the plaintiff could prove a theft, embezzlement, or some other specific cause. What then becomes of the "all-risk" feature of the policy? As the Court said in Chase Rand Corporation v. Central Ins. Co. of Baltimore,[1] in construing such a feature of a jeweler's block policy: "Plaintiff's sole obligation was to furnish defendant with such explanation, as it, in good faith, received and accepted concerning the time and cause of the loss, and this it has done. If plaintiff were required to go further * * * the inclusive character of the coverage of the insurance policy would be a *delusion, and a snare"* (emphasis supplied) citing and relying upon Agricultural Insurance Co. v. A. Rothblum, Inc.,[2] which had held that "in an action by the insured against insurer, the onus would not be upon the insured to allege and prove, as a condition precedent, that the loss was not occasioned by the specified exceptions. Rather it would be incumbent upon the insurer to allege and prove, as a condition subsequent, that the loss arose from one of the excepted causes."

If the clauses in each of the policies, that of Jeweler's Mutual and that of Western Assurance, be examined, it will be found that they read:

---

1. Chase Rand Corporation v. Central Ins. Co. of Baltimore, D.C.N.Y.1945, 63 F. Supp. 626, 629, affirmed 2 Cir., 1945, 152 F.2d 963.

2. Agricultural Insurance Co. v. A. Rothblum, Inc., 147 Misc. 865, 265 N.Y.S. 7, 9.

"This Policy Insures Against All Risks Of Loss Of Or Damage To The Above Described Property Arising From Any Cause Whatsoever Except:

\*   \*   \*   \*   \*   \*

"(M) Unexplained loss, mysterious disappearance or loss or shortage disclosed on taking inventory."

■ It would appear that the phrase "disclosed on taking inventory" not being set off by commas, was intended to modify disappearance and loss as well as shortage. In fact the whole exception seems to concern itself with losses, disappearances or shortages disclosed upon the taking of inventory. At least it is equally susceptible of such an interpretation and the ambiguity is to be resolved against the party drawing the instrument. Furthermore such an interpretation would be more in keeping with the "all-risk" feature of the policy than would defendant's suggested interpretation. It must be observed that the cases upon which defendant relies do not involve "all-risk" policies, but rather theft policies, in which a mysterious disappearance is made prima facie evidence of theft. This type of policy is so different from that with which we are here concerned that the cases construing such theft policies are of little or no weight in the present situation.

Even assuming for the sake of argument that any mysterious disappearance is an excepted cause, still the burden is upon the defendant to prove that the loss was due to the excepted cause, so that, the fact that it may not be possible to find in this case that the plaintiff has proved a theft by a preponderance, is immaterial as he has no such burden. What is important is that it is not possible to find that the defendant has established its defense that the cause of the loss was a mysterious disappearance, and so this defense must fail.

Moving on then to the next defense raised by both Jeweler's and Western Assurance, that is, that defense based on the inventory clause we find that each policy contains the following clause:

"It is a condition of this insurance that:

"(A) The Assured will maintain a detailed and itemized inventory of his or their property and separate listing of all travelers stocks, in such manner that the exact amount of loss can be accurately determined therefrom by the company."

■■ It has been consistently held in Florida [3] and elsewhere [4] that all that is required by such a clause is substantial compliance. I think there has been such substantial compliance in this case. It is true that there are lacunae in each individual plaintiff's bookkeeping records, regarded only as bookkeeping records, but considering that the records of each were made available to all adjustors and regarding these records logically and in combination with all the factors in the case, it is perfectly obvious to the Court —as indeed it apparently was to all parties long before trial—what was the exact amount of the loss. No one seemingly has ever disputed that certain specific items were lost, nor the consigned value of these items. The purpose of the above quoted clause has been fulfilled and a mere formal failure to comply therewith should not work a forfeiture where the insurer has in no way been prejudiced. Furthermore as to the Western Assurance Company policy, it and its agent had full knowledge of the bookkeeping system maintained by David Balogh, as evidenced by the correspondence between them which was introduced into evidence, and it may be said to have acquiesced therein. However, I do not base my decision concerning this defense on waiver since I think there actually had been a substantial compliance with the clause of the policy.

3. Palatine Ins. Co. v. Whitfield, 73 Fla. 716, 74 So. 869; General Accident Fire & Life Assur. Corp. v. Schero, 5 Cir., 151 F.2d 825, 827.

4. 5 Couch on Insurance, § 1026, page 3583.

The third defense—limiting liability to actual cash value or replacement cost —raised only by Jeweler's Mutual in the suit by Julien Balogh against it, is based upon the following clause of the Jeweler's Mutual policy:

"The Company shall not be liable beyond the actual cash value of the property at the time of any loss or damage and the loss or damage shall be ascertained or estimated according to such actual cash value with proper deduction for depreciation, however caused, and shall in no event exceed the lowest figure put upon such property in the Assured's inventories, stock books, stock papers or lists existing at the time the loss occurred, nor the cost to repair or replace the same with material of like kind and quality. Any antiquarian or historical value attaching to the said property shall be excluded from the estimate of loss or damage."

It is Jeweler's contention that there is no evidence of the actual cash value of any of the items here involved. While it is true that no outside expert has testified as to the actual value of any particular item, the replacement value of the consigned items is presumably the price at which they are consigned and which plaintiff, Julien Balogh has obligated himself to pay, if the goods are not returned.

Absent a showing of fraud or collusion it is not to be assumed that an expert diamond merchant would assume such an obligation if the value were greatly inflated. As to the replacement cost of the gold bracelet and charms we know exactly what it cost Julien to replace them. There is evidence of the trade-in allowance made by David on the Krone rings, and it is this price at which they were consigned to Julien. Both Julien and David testified as to the value of the various items, including Sallie Balogh's ring. It must be remembered that both Baloghs are diamond experts. If defendant, Jeweler's, disputed the valuation of any of these items, it had it in its power to introduce evidence tending to show they had some other value. This the defendant did not do.

The next defense raised by the defendants in all three cases is based on the "other insurance" clause in the three policies. Since this is an important defense and presents many vexing problems which do not readily admit of solution, it will be well to set out the various clauses with which we are dealing.

Jeweler's Mutual and Western Assurance policies have identical clauses in the following terms:

"Para. 11 It is understood and agreed that any insurance granted herein shall not cover (excepting as to the legal liability of the Assured), when there is any other insurance which would attach if this policy had not been issued, whether such insurance be in the name of the Assured or of any third party. It is, however, understood and agreed, that if under the terms of such other insurance (in the absence of this policy) the liability would be for a less amount than would have been recoverable under this policy (in the absence of such other policy) then this policy attaches on the difference."

"Para. 12 This insurance shall in no wise inure directly or indirectly to the benefit of any carrier or other bailee."

Pennsylvania Lumbermens policy contains the following clauses:

"Para. 6 No loss shall be paid hereunder if the Insured has collected the same from others."

"Para. 7 This insurance shall in no wise inure directly or indirectly to the benefit of any carrier or other bailee."

"Para. 18 This company shall not be liable for loss if at the time of loss, there is any other insurance which would attach if this insurance had not been effected, except that this insurance shall apply only as excess and in no event as contributing insurance and then only after all

other insurance has been exhausted."

■ The question of the effect to be given such exclusionary clauses found in policies has been considered in several cases, and is the subject of an annotation in 122 A.L.R. 1204. As seen by the cases there discussed, many different criteria have been used to determine on which insurer the liability will fall, such as: 1. priority in time of the policies; 2. which policy is the more specific; 3. the exact wording of the particular exclusionary clauses, etc. In Oregon Auto Ins. Co. v. United States Fidelity & Guarantee Co.,[5] cited by plaintiff, all such distinctions were rejected and the court adopted as the most practical solution an even division of liability. However, we must distinguish the Oregon and other automobile cases where in fact the driver becomes an additional insured under the owner's policy, which then insures both against their legal liability to others, from our cases where the policies simply insure the name insured against pecuniary damage resulting from a destruction or loss caused by certain perils. Whatever might be the parallel between the two types of cases if third parties were suing the Baloghs for the loss of such third party's property, in a suit by the named insured against his own insurer the position is entirely different. Looking at the relationship of the respective parties, in relation to their own insurers, and any other insurers involved, we find that both the Western Assurance policy and Pennsylvania Lumbermens policies provide that they are not to inure directly or indirectly to the benefit of bailees, just the reverse of the additional insured provisions of an antomobile policy. Julien is such a bailee here and he has a legal liability for the loss. To hold either of David's insurers primarily liable as far as Julien is concerned would extend the coverage beyond that for which the parties had contracted. Since Julien cannot have any benefit from David's policies, as between Julien and his own insurer, Jeweler's Mutual, there is no other insurance "which attaches" within the meaning of Para. 11 of Jeweler's Mutual policy, and provided there are no other valid defenses Julien is entitled to recover from his own insurer, the value of the jewelry he has lost.

■ By the same token as regards the relationship of David and his insurers, the "other insurance" clauses there should be construed as if they read "It is understood and agreed that any insurance granted herein shall not cover when there is any other insurance which would attach *for the benefit of the named insured. * * *"* David is entitled to the benefit of his contract and the mere fact that there is someone against whom he may assert legal liability would not preclude his recovery, therefore the fact that that person is himself insured should not do so. Julien's insurance in no way inures to David's benefit and should not properly be considered other insurance "which attaches." Therefore in the absence of any other valid defenses David should recover from Western Assurance for those items which were lost while among the stock of Julien. Western would of course, under the subrogation clause of the policy be entitled to whatever rights David would have against Julien, and under the facts of this case and in view of the third party action, would be entitled to a judgment over against Julien for the full amount of David's recovery.

■ There is an additional problem as between Western Assurance and Pennsylvania Lumbermens respective liability for Sallie's ring. Here different principles must come into play. The same person here has the benefit of two coverages, the one specific, the other of a blanket type. Of the various conflicting rules the most just in this instance is that the more specific is primarily liable.[6] Thus

5. Oregon Auto Ins. Co. v. United States Fidelity & Guaranty Co., 9 Cir., 1952, 195 F.2d 958.

6. Trinity Universal Ins. Co. v. General Accident, Fire & Life Assur. Corp., 1941, 138 Ohio St. 488, 35 N.E.2d 836; Hart-

in this case the Pennsylvania Lumbermens policy would be liable on the specific coverage of the ring. The ring still belonged to David or one of his household, it was insured in any situation, and none of the exceptions here apply, so that in the absence of any other valid defense, David would be entitled to a judgment against Pennsylvania Lumbermens for the coverage of the one ring, specifically insured by them. This being so, as to this one ring, the "other insurance" clause of the Western Assurance policy would apply and Western Assurance would not be liable for such ring. In any event, if David is entitled to recover against Pennsylvania Lumbermens then the latter is entitled under the subrogation clause to whatever rights David would have against Julien, and in view of the third party action and the facts in this case would be entitled to a recovery over against Julien for whatever judgment David might recover against it.

The next defense, raised only by Jeweler's Mutual and Pennsylvania Lumbermens, is based upon the respective plaintiff's failure to file proof of loss within 60 days (Jeweler's) and 90 days (Lumbermens) respectively. Neither plaintiff claims that it complied literally with this provision, and each admits that it never did file a sworn proof of loss in writing. However, each contends that both by the acts of the respective adjustors as well as by an ultimate unconditional denial of liability on other grounds, the respective insurers have waived the right to rely on this ground as a defense.

It is the law generally that the unconditional denial of liability within the period allowed by the policy for the filing of proof of loss constitutes a waiver of the requirement.[7] The ra-tionale behind such holdings is that the denial of liability on other grounds before the time to file the proof of loss has expired, indicates that the insurer has already made up its mind to refuse payment for any loss and therefore filing of proofs of loss would be a vain and futile act. In some jurisdictions the rule is broader in that an unconditional denial at any time is a waiver without regard to the filing period. The Florida cases generally state the rule without any reference to the filing period and in recent cases in both State[8] and Federal Courts[9] a denial has been held to be a waiver, apparently without regard to filing period. This is only logical under the acknowledged Florida doctrine that failure to file proofs of loss does not work a forfeiture but simply postpones the time when suit can be brought, and a late filing of the proof of loss is sufficient, provided it is within the statutory period for commencing suit.[10] If this is so then logically a denial of liability for reasons not connected with the proof of loss at any time before the suit is time-barred should be a waiver of the requirement to file a proof of loss for the identical reason that such a denial before the time limited in the policy has expired is a waiver, viz. the denial makes compliance with the filing requirement a futile act and a needless preliminary to bring suit. For these reasons in light of the cases above referred to I take the law in Florida to be that the denial at anytime before the suit is time-barred waives the requirement of filing a proof of loss. Under this view of the law the requirement of filing a proof of loss was waived under both policies here in question. Although I am fully convinced for the reasons stated above that the denial of liability waived the requirement, I think a waiver could also be spelled out, at

ford Steam Boiler Inspection & Insurance Co. v. Cochran Oil Mill & Ginnery Co., 1921, 26 Ga.App. 288, 105 S.E. 856.

**7.** 49 A.L.R.2d 163.

**8.** Guarantee Mut. Fire Ins. Co. v. Jacobs, 1952, Fla., 57 So.2d 845, 848.

**9.** American Ins. Co. of Newark, N. J. v. Burson, 5 Cir., 1954, 213 F.2d 487, 48 A.L.R.2d 1.

**10.** Hartford Fire Ins. Co. v. Redding, 1904, 47 Fla. 228, 37 So. 62, 67 L.R.A. 518.

least as to Jeweler's, from the adjustor's conduct, as outlined in Findings Nos. 24 and 30 and reflected in the testimony.[11]

The last defense raised by Jeweler's—that the property is not property covered by the policy—is easily disposed of. In order to sustain this defense it would have to be shown that the property was: 1. not owned by the assured, 2. not entrusted to assured by non-dealers, or 3. if entrusted by dealers, assured incurred no legal liability therefor. Apparently in connection with this defense, defendant Jeweler's argues in its post trial brief that the receipt signed by Julien when he received the consigned goods from David is written evidence of a "contract of bailment," that as such it cannot be added to or changed by oral testimony, that, as bailee, Julien is liable only for ordinary negligence, that he was not negligent and therefore has no liability and so those articles bailed to him by David are without the coverage of the policy. Factually, however, the argument fails, for, as to dealers other than David, Julien was clearly an insurer and as to David the parol evidence is not violated by admission of oral evidence to explain so ambiguous a document as the "receipt" here involved. That oral evidence clearly establishes that by long custom Julien was to return the consigned merchandise or pay for it and thus had insurer's liability to David as well. But even adopting the defendant Jeweler's version of the law, i. e., that as to David, Julien was a mere bailee, the facts in evidence are sufficient to show that Julien Balogh did not act as a reasonably prudent person in caring for these diamond rings. Jeweler's Mutual argues that it is sufficient if the bailee bestows the same care on the bailed merchandise as on his own merchandise. This is a false criterion for Julien may have been grossly negligent as to the care of his own merchandise. The argument is specious, in any event, since Julien owned no merchandise himself of a type comparable to that which was stolen, and there can be no comparison between the care he bestowed on costume and other jewelry of little value, and these rings of great value. The test is rather the bestowal by the bailee of that degree of care that a *reasonably prudent person* would bestow on his own goods. The care Julien bestowed on these rings was far from that of a reasonably prudent man, even by his own standards in regard to similar merchandise on this and prior occasions, and whether his liability be that of an insurer or of a bailee for mutual benefit, he is liable to his respective consignors. Therefore every item involved is within the policy coverage, being entrusted either by a person who was not a dealer, or by dealers to whom Julien has legal liability for the loss.

Defendant, Jeweler's, attempts to raise for the first time in its post trial brief a defense that there was material misrepresentation made by Julien Balogh in his application for insurance and that the policy is void ab initio. Aside from the fact that the defense is raised after trial, with no opportunity for the plaintiff to meet it, the facts do not support defendant's position, certainly not by a preponderance of the evidence.

### Conclusions of Law

1. The Court has jurisdiction of the parties and of the subject matter under 28 U.S.C. § 1332.

2. In Case No. 7289, plaintiffs, Julien and Harriet Balogh, d/b/a Balogh's of Coral Gables, have made out a case for recovery under their policy with Jeweler's Mutual, and are entitled to recover $19,532, plus attorney's fees in the amount of $2,053 (this is stipulated to be ten (10%) percent of the recovery plus $100) and costs.

3. In Case No. 7297, plaintiff, David R. Balogh, has made out a case of recovery under its policy with Western Assurance, except as to that one ring designated as Sallie Balogh's personal ring, and is entitled to recover from that defendant in Case No. 7297, $9,018, plus attorney's fees in the amount of $1,000,

11. Daniel v. Fireman's Fund Ins. Co., 5 Cir., 1931, 46 F.2d 784, and cases cited therein.

and costs. In the same case, the third-party plaintiff, Western Assurance, has sustained its case against the third-party defendants, Julien and Harriet Balogh, and is entitled to recover $9,018 against them, plus costs against them.

4. In Case No. 7299, plaintiff, David R. Balogh, has made out a case of recovery under its policy with Pennsylvania Lumbermens and is entitled to recover $6,500, plus attorney's fees of $750, plus costs. In the same case, the third-party plaintiff, Lumbermens, has sustained its case against the third-party defendants, Julien and Harriet Balogh, and is entitled to recover $6,500, plus costs against them.

5. Final Judgments in the respective cases shall be submitted in accordance with the above conclusions.