Miller *v.* Boston Insurance Company, Appellant.

Argued November 16, 1965. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Richard W. Hopkins,* with him *White & Williams,* for appellant.

*Cornelius C. O'Brien, Jr.,* with him *Matthew J. Ryan, III,* for appellee.

OPINION BY MR. JUSTICE O'BRIEN, March 22, 1966:

Appellee, Benjamin Miller, brought an action of assumpsit against appellant, Boston Insurance Company, to recover for the loss of a diamond ring, which was insured by appellant under a Jewelers' Block Policy. The policy insured appellee against "all risks of loss of or damage . . . arising from any cause whatsoever except: . . . (M) Unexplained loss, mysterious disappearance or loss or shortage disclosed on taking inventory".

On March 11, 1958, Miller, a dealer in jewelry, consigned the ring to Jacob Friedman, who was also a jewelry dealer. On the following day, Friedman consigned the ring to another dealer, David Willner, who was attempting to sell the ring. Willner's body was recovered from the East River in New York City in July of 1958. The day before his death, Willner stated he had the ring "in his pocket" and was still trying to sell it. The record is bare as to any evidence of the

cause of Willner's death, and the ring was not returned to either Friedman or appellee.

On August 16, 1958, appellee, by letter, requested the return of the ring from Friedman. This letter, and other inquiries, produced no results. The written memorandum under which Friedman obtained the ring from appellee holds Friedman responsible for the care, custody and return of the ring. Friedman made inquiries of Willner's executor, and his attorney also investigated as to the whereabouts of the ring. The ring was never returned or, to appellee's knowledge, found by Friedman or any person acting in his behalf.

At trial, the jury returned a verdict for appellee against the appellant, the Boston Insurance Company, and the additional defendant, Jacob Friedman. The only issue the lower court submitted to the jury was whether it believed the testimony of appellee, Miller, and the additional defendant, Friedman. These issues resulted from the lower court's interpretation of the insurance policy's coverage. Following the verdict, appellant made motions for judgment n.o.v. and for a new trial. This appeal followed denial of the motions and entry of judgment on the verdict.

In *Connolly v. P.T.C.*, 420 Pa. 280, 216 A. 2d 60 (1966), we stated: "In considering a motion for judgment n.o.v., the evidence together with all reasonable inferences therefrom is considered in the light most favorable to the verdict winner. Lewis v. United States Rubber Co., 414 Pa. 626, 202 A. 2d 20 (1964); Pritts v. Wigle, 414 Pa. 309, 200 A. 2d 386 (1964); Chambers v. Montgomery, 411 Pa. 339, 192 A. 2d 355 (1963); and in reviewing on appeal, we stated in Vignoli v. Standard M. Freight, Inc., 418 Pa. 214, 210 A. 2d 271 (1965): 'The grant or refusal of a new trial will not be reversed on appeal, absent an abuse of discretion or error of law which controlled the outcome of the case.' " See *Weed v. Kerr*, 416 Pa. 233, 205 A. 2d 858 (1965),

and cases cited therein. Viewing the record in the light of these standards, we conclude that the judgment must be affirmed.

Initially, before considering the policy in the instant case, we must first set forth some general rules which we have held applicable to insurance policies. In *Warner v. Employers' L. Assur. Corp.*, 390 Pa. 62, 133 A. 2d 231 (1957), we said: "While policies of insurance will be construed most strongly against insurer (Blue Anchor Overall Co. v. Pennsylvania Lumbermens Mutual Insurance Company, 385 Pa. 394, 397, 123 A. 2d 413), it is a necessary prerequisite to recovery upon a policy for the insured to show a claim within the coverage provided by the policy: Fullmer v. Farm Bureau Mutual Automobile Insurance Company, 350 Pa. 451, 452, 39 A. 2d 623." In *Armon v. Aetna Casualty and Surety Co.*, 369 Pa. 465, 469, 87 A. 2d 302 (1952), we held: "A defense based on an exception or exclusion in a policy is an affirmative one, and the burden is cast upon the defendant to establish it: Bowers v. Great Eastern Casualty Company, 260 Pa. 147, 148, 149, 103 A. 536; Watkins v. Prudential Insurance Co., 315 Pa. 497, 508, 173 A. 644, 650; Zenner v. Goetz, 324 Pa. 432, 435, 188 A. 124, 125; Gardocki v. Polish National Alliance of United States of America, 141 Pa. Superior Ct. 53, 59, 14 A. 2d 604, 607; Brier Hill Coal Co. v. Hartford Steam Boiler Inspection & Insurance Co. of Hartford, 146 Pa. Superior Ct. 193, 196, 22 A. 2d 230, 231."

It is hornbook law that in construing any written instrument, and particularly an insurance contract, the instrument must be strictly construed against the writer. See *Barnes v. N. A. Accident Insurance Co.*, 176 Pa. Superior Ct. 294, 107 A. 2d 196 (1954).

Appellant in its brief indicates "The only issue in this case is whether the plaintiff has proved 'a loss of property' under an All-Risks Policy by showing that

the last known consignee of the property died without returning the property to the insured." Appellant relies chiefly upon *Mellon v. Federal Ins. Co.*, 14 F. 2d 997 (D.C.S.D. N.Y. 1926), which involved damage to ship's boilers and what Judge HAND considered to be an "all risks" policy. Judge HAND in that case stated: "The perils clause is an 'all risk' clause, and the libelant has discharged his burden when he has proved that the loss was due to a casualty and was caused by some event, as here by the hydrostatic test, covered by the general expressions of the policy. 'He is not bound to go further, and prove the exact nature of the accident or casualty which in fact occasioned his loss.' British & Foreign Marine Ins. Co. v. Gaunt, (1921) A. C. 41. In the Inchmaree clause the casualty came within a specified risk. . . . As Lord Sumner, said, in the recent case of British & Foreign Marine Co. v. Gaunt, (1921) 2 A.C. at page 57: 'The expression does not cover inherent vice or mere wear and tear. . . . It covers a risk, not a certainty; it is something which happens to the subject-matter from without, not the natural behavior of that subject-matter, being what it is, in the circumstances under which it is carried. Nor is it a loss which the assured brings about by his own act, for then he has not merely exposed the goods to the chance of injury; he has injured them himself. Finally, the description 'all risks' does not alter the general law; only risks are covered which it is lawful to cover, and the onus of proof remains where it would have been on a policy against ordinary sea perils.' See, also, Schloss Brothers v. Stevens, [1906] 2 K.B. 665; Grant Smith & Co. v. Seattle Construction & Dry Dock Co., [1920] A.C. 162."

Black's Law Dictionary defines the word "Risk" as follows: "In insurance law; the danger or hazard of a loss of the property insured; the casualty contemplated in a contract of insurance; the degree of hazard;

a specified contingency or peril; and, colloquially, the specific house, factory, ship, etc., covered by the policy."

George J. Couch, in his excellent "Cyclopedia of Insurance Law", 5 Couch on Insurance, p. 4152, Sec. 1169, says: "'All risks.'—An insurance may be in general terms, by a policy covering all risks. Thus, a policy against 'all risks,' the words being inserted in writing, ordinarily covers every loss that may happen, except by the fraudulent acts of the insured." See also *Sun Ins. Office, Ltd., v. Clay,* 133 So. 2d 735 (1961). Therefore, we must conclude that the very nature of the term "all risks" must be given a broad and comprehensive meaning as to covering any loss other than a wilful or fraudulent act of the insured.

The basic problem before us, then, in this case, is whether appellee has proved the loss of property under the all-risks policy. The applicable rule of law was initially set forth in *Agriculture Insurance Co. v. A. Rothblum, Inc.,* 147 Misc. 865, 265 N.Y.S. 7. It was there held that the sole obligation of the plaintiff was to furnish the defendant with such explanation as it, in good faith, had received and accepted as to the time and cause of the loss. If we were to require the plaintiff to go further and guarantee the accuracy of the explanation of the loss that might have been given to it by the person to whom custody of the goods had been entrusted and who, himself, might be guilty of a fraud unknown to the plaintiff, the inclusive character of the coverage afforded by the insurance policy would be a mere delusion. If the custodian of the property converted the same and was guilty of a breach of trust, the defendant should establish that fact. This rule was followed in *Chase Rand Corp. v. Central Ins. Co. of Baltimore,* 63 F. Supp. 626 (D.C.S.D. N.Y. 1945), affirmed 152 F. 2d 963 (2d Cir. 1945), in which the plaintiff brought an action to recover from the defend-

ant Insurance Company for the alleged loss of a quantity of jewelry protected under the provisions of a Jewelers' Block Insurance Policy issued by the defendant. The plaintiff, at trial, proved delivery of the jewelry to Ben Levit, a jewelry dealer, on consignment. Ben Levit, in turn, entrusted certain items of jewelry which he had received from the plaintiff to his nephew, Hyman Levit, who was employed by his uncle as a salesman. Hyman Levit reported the jewelry in his custody was stolen while he was on the road going to Van Horn, Texas. There was serious question at the trial as to whether the alleged robbery, in fact, did occur. Defendant, in its answer, in addition to a general denial of the allegations set forth in the complaint, set forth six affirmative defenses, all but two of which were abandoned. The ones that remained were: "(2) That the defendant, by an exception contained in the policy, is without liability, if loss, damage or expense occurs to the assured as a result of theft or an act of dishonest character on the part of the assured or his employee, or any person to whom the insured property may be delivered or entrusted. It is then alleged that the jewelry in question was entrusted to Ben Levit on memorandum, and that he, in violation of his trust, delivered the same to Hyman Levit and that the loss was due to a breach of trust. (6) That the loss, if it occurred at all, was the result of the conversion of plaintiff's merchandise by Hyman Levit, to whom Ben Levit had entrusted it, and that such conversion is not within the terms of the policy."

The court, in following the rule set forth in *Agricultural Insurance Co. v. A. Rothblum, Inc.,* supra, held that: "Neither of these defenses, in my judgment, has been established, and if either of them is to be available to defendant, it is defendant's burden to sustain the same. As has been previously said, the condition of this record is insufficient to enable me to find

that the loss was due to any malfeasance on the part of Hyman Levit. My suspicions of his good faith are based, more or less, upon drawing one inference from another, and this process of reasoning cannot be utilized for the purpose of making a judicial determination. In addition, I do not believe that plaintiff is required, as defendant contends, to bear the burden of proving the loss was due to the robbery of Hyman Levit. . . ."

In a brief Per Curiam opinion, the Circuit Court of Appeals, Second Circuit, 152 F. 2d 963, p. 964, in affirming the decision, stated: "The statements as to plaintiff's information about the theft from the consignee's employee in the complaint were surplusage. The burden of proving that the loss came within the exception rested on defendant. Agricultural Insurance Co. v. Rothblum, 147 Misc. 865, 265 N.Y.S. 7."

The trial judge, in the instant case, drew from the *Chase Rand* case, supra, the proper conclusion, stating: "The true significance of this case is that all the plaintiff must prove to make out a prima facie case, is that upon making demand of the return of jewelry covered by an 'all risk' policy, the jewelry was not returned. He has the additional burden of giving to the insurer whatever reason or cause of the loss was given him, in good faith, but plaintiff need not prove the actual cause of the loss at the trial."

In *Balogh v. Jewelers Mutual Insurance Co.*, 167 F. Supp. 763 (S.D. Fla. 1958), affirmed 272 F. 2d 889, plaintiff brought an action on an all risk insurance policy. A box containing certain rings was missing. A thorough search was made for the ring box and rings but they were never found. There was no evidence of possible entry, either of the store or the safe where the box was stored. The missing rings were insured under provisions of a Jewelers Mutual policy. Various defenses were raised by the respective defendants, similar

to those in the instant case. In considering the first defense, that of mysterious disappearance, the court very clearly and, we believe, correctly answers this question, stating: "Considering the first defense—mysterious disappearance—raised by Jeweler's as a defense to the suit brought against it by Julien and Harriet Balogh, and by Western Assurance as a defense to the suit brought against it by David Balogh, we must begin with the proposition that this is not a theft policy. Plaintiffs in the respective suits are not required to show a theft before they are entitled to recover. The policy here involved is much broader and is of the type known as an 'all-risk' policy. It is axiomatic that plaintiff must show that the loss falls within the risks insured against, but it is also axiomatic, that it is for the defendant to show that the loss was not due to one of the risks insured against but rather to an excepted cause. It would seem that all plaintiff need show in such a case is a loss, since losses from all causes are covered. Defendant, arguing that a mysterious disappearance is 'any disappearance the circumstances of which excite—and at the same time baffle—wonder or curiosity.' attempts to distinguish between the classic cases of lost or misplaced property, and a case which is baffling and therefore a mysterious disappearance. Assuming that it has proved its point, at least in the first instance, defendant argues that plaintiff was therefore under the obligation to go forward and prove a theft, and, having failed to do so, cannot recover. As can be seen, defendant relies to a large extent on semantics. Under his theory, any loss, the exact cause of which could not be proved by at least a preponderance of the evidence, would automatically be classed as a mysterious disappearance, and recovery would be defeated unless the plaintiff could prove a theft, embezzlement, or some other specific cause. What then becomes of the 'all-risk' feature of the policy? As the Court said in

Chase Rand Corporation v. Central Ins. Co. of Baltimore, in construing such a feature of a jeweler's block policy: 'Plaintiff's sole obligation was to furnish defendant with such explanation, as it, in good faith, received and accepted concerning the time and cause of the loss, and this it has done. If plaintiff were required to go further . . . the inclusive character of the coverage of the insurance policy would be a *delusion, and a snare*' (emphasis in original) citing and relying upon Agricultural Insurance Co. v. A. Rothblum, Inc., which had held that 'in an action by the insured against insurer, the onus would not be upon the insured to allege and prove, as a condition precedent, that the loss was not occasioned by the specified exceptions. Rather it would be incumbent upon the insurer to allege and prove, as a condition subsequent, that the loss arose from one of the excepted causes.'

"If the clauses in each of the policies, that of Jeweler's Mutual and that of Western Assurance, be examined, it will be found that they read: 'This Policy Insures Against All Risks Of Loss Of Or Damage To The Above Described Property Arising From Any Cause Whatsoever Except: . . . (M) Unexplained loss, mysterious disappearance or loss or shortage disclosed on taking inventory.'"

In considering either the unexplained loss, mysterious disappearance, or shortage on taking inventory, the court further states: "It would appear that the phrase 'disclosed on taking inventory' not being set off by commas, was intended to modify disappearance and loss as well as shortage. In fact the whole exception seems to concern itself with losses, disappearances or shortages disclosed upon the taking of inventory. At least it is equally susceptible of such an interpretation and the ambiguity is to be resolved against the party drawing the instrument. Furthermore such an interpretation would be more in keeping with the 'all-risk' feature of

the policy than would defendant's suggested interpretation. It must be observed that the cases upon which defendant relies do not involve 'all-risk' policies, but rather theft policies, in which a mysterious disappearance is made prima facie evidence of theft. This type of policy is so different from that with which we are here concerned that the cases construing such theft policies are of little or no weight in the present situation."

In *Wzontek v. Zurich Ins. Co.*, 418 Pa. 30, 208 A. 2d 861 (1965), we determined the insurance company to be liable under a policy insuring Braden. The insurance company, in that case, sought to avoid liability by contending that the loss came within an exception of their policy. We followed our earlier decision reached in *Newman v. Mass. Bonding & Ins. Co.*, 361 Pa. 587, 65 A. 2d 417 (1949) : "The Coverage Analysis recited the business of the assured (commercial photographers) and provided that the coverage was on 'all operations—including studios.' The court must give effect to every word that can be given effect. By the familiar rule applicable in such circumstances, that typewritten provision, which is the parties last expression of their intention, must be given effect to the exclusion of the printed portions in Exclusion (h) [Citing cases.]."

In giving effect to each word in the policy issued by the Boston Insurance Company to Benjamin Miller, we must reach the conclusion that "against all risks of loss of or damage to the above described property arising from any cause whatsoever. . . ." means that the loss in question must fall within the limits of that provision. It would be both unfair and unreasonable under a policy such as this to make the insured prove more than the loss.

As the burden of proof that a loss comes within the scope of an exception or an exclusion in a policy is an affirmative one, it necessarily follows that the burden

is placed upon the defendant. "It is only when the existence of facts constituting an affirmative defense is admitted by the plaintiff, or is established by uncontradicted testimony in the plaintiff's case, that such burden is removed from the defendant." *Armon v. Aetna Casualty and Surety Co.*, supra. No such condition exists in the instant record and, appellant having failed to carry its burden of establishing an affirmative defense, we conclude that the loss does not fall within the exclusionary provisions of the insurance policy.

Judgment affirmed.