ACE AMERICAN INSURANCE
COMPANY, Appellant

v.

UNDERWRITERS AT LLOYDS AND COMPANIES, Columbia Casualty Company and Gulf Underwriters Insurance Company.

Ace American Insurance Company,

v.

Underwriters at Lloyds and Companies, Columbia Casualty Company and Gulf Underwriters Insurance Company,

Appeal of: Columbia Casualty Company.

Ace American Insurance Company,

v.

Underwriters at Lloyds and Companies, Columbia Casualty Company and Gulf Underwriters Insurance Company,

Appeal of: J. Randolph Evans, Esquire.

Superior Court of Pennsylvania.

Argued Sept. 18, 2007.
Filed Dec. 20, 2007.

Gale White, Philadelphia, for Ace American.

Robert Brian Bodzin, Philadelphia, for Columbia Casualty.

Christopher Lawrence Holmes, Philadelphia, for appellee.

BEFORE: MUSMANNO, PANELLA and DANIELS, JJ.

OPINION BY DANIELS, J.:

### BACKGROUND OF CASE

¶ 1 The facts and procedural history pertinent to each of these consolidated appeals will be hereinafter addressed fully, but the underlying litigation is between ACE American Insurance Company ("ACE"), a commercial insurer, and its Errors and Omissions ("E & O") insurers, Columbia Casualty Company ("Columbia") and Universal Underwriters at Lloyds and Companies ("Lloyds"). The dispute arose out of a claim reported by ACE to Columbia and Lloyds, under its E & O policy; Columbia and Lloyds denied ACE's claim as untimely noticed to them. Because of this denial, ACE sued both Columbia and Lloyds. After a jury trial on the issue of coverage, a verdict was returned in favor of Columbia and Lloyds and against ACE. This appeal followed, involving individual appeals of three separate orders that were entered by the trial court on October 17, 2006, September 19, 2006, and March 21, 2006, respectively. We shall address each of these appeals in such sequence.

### JUDGMENT OF OCTOBER 17, 2006

#### (Consolidated Appeal No. 2847 EDA 2006)

¶ 2 On July 17, 2001, ACE sued Columbia and Lloyds, its E & O insurers, after

Columbia and Lloyds refused to pay ACE's claim for $37.2 million, which arose out of a bad faith claim that was lodged against ACE in 1996 by its commercial insured, Refuse Fuels. Columbia and Lloyds based their denial of coverage on ACE's failure to timely comply with the policy's heightened and specific notice requirements for claims that are reasonably anticipated to exceed $4 million.[1] In this matter, according to Columbia and Lloyds, such specific notice should have been provided and would have been timely given had it been received by them on or before June 30, 1999, but ACE did not provide such notice until July 27, 2000, almost a year too late. Thus Columbia and Lloyds have asserted that they were justified in denying ACE's claim for coverage. ACE has responded that it did comply with the policy's general reporting requirements,[2] which should have been sufficient to effectuate coverage.

¶ 3 The trial court bifurcated the case for trial with respect to the issues of coverage and bad faith. After a two week jury trial on the coverage issue, a verdict was returned in favor of Columbia and Lloyds and against ACE. ACE's post-trial mo-

tions for a new trial or for judgment notwithstanding the verdict (JNOV) were denied by the trial court, and final judgment was entered against ACE on October 17, 2006.

## QUESTIONS ON APPEAL

¶ 4 This appeal followed, in which ACE presents the following questions for our review:

1. When ACE, the policyholder under a claims-made and reported policy, timely reported the claim and, thereby, undisputably established that it fell within the coverage grant of the policy, did the trial court err as a matter of law in failing to impose on the insurers [Columbia and Lloyds] the burden of proving that ACE breached a separate notice of claim provision to disclaim coverage based on late notice?

2. When ACE timely reported the claim and, thereby, undisputably established that it fell within the coverage grant of the policy, did the trial court err as a matter of law in failing to impose on the insurers the burden of proving prejudice resulting from ACE's

---

1. The specific notice section of the E & O policy that is in question provides: "The Insured shall provide notice of all Claims to the Insurer as soon as practicable after such Claims first become known to the General Counsel or Risk Manager of the Principal Insured, but in no event later than ninety (90) days after the expiration of the Policy Period or the Optional Extension Period, if purchased. If a Claim which is reasonably likely to result in Loss exceeding $4,000,000 is made against the Insured, then the Insured shall forward as soon as practicable to Insurer every demand, notice, summons or other process received by the Insured or by their representatives. The Insured may provide a cumulative notice of all Claims which the Insured reasonably believes are unlikely to result in Loss exceeding $4,000,000 by means of a quarterly bordereau listing of all such Claims."

2. The general reporting section of the E & O policy that is in question provides: "The Insurer agrees to indemnify the Insured for the amount of Loss which such Insured shall have sustained resulting from any Claim which alleges any act, error, omission, misstatement, misleading statement, or neglect or breach of responsibility, obligation or duty by or on behalf of the Insured in the performance of Professional Services and which is first made against the Insured during the Policy Period or the Optional Extension Period, if purchased, and reported to the insurer during the Policy Period or the Optional Extension Period, if purchased, or within ninety (90) days after the expiration of the Policy Period of the Optional Extension Period, if purchased."

alleged late notice under a separate notice of claim provision?

3. Did the trial court err as a matter of law in failing to adopt ACE's interpretation of the notice provision and, alternatively, in failing to find the provision ambiguous, failing to construe the provision in favor of the insured, excluding relevant evidence, and giving a misleading jury instruction on the provision?

4. Did the trial court commit prejudicial error in precluding evidence that showed that the insurers were estopped from asserting their late notice defense?

5. Did the trial court commit prejudicial error in precluding evidence regarding the insurers' admissions as to the value of the claim when the jury was asked to decide whether ACE was reasonable in its belief as to the value of the claim?

6. When the initial trial judge entered an order compelling the insurers to produce certain discovery during the coverage phase of the trial, did the subsequent trial judge err as a matter of law in failing to enforce that order on the basis that the order did not pertain to discovery on coverage?

Appellant's Brief, p. 6.

### DISCUSSION

#### Assignment of Error # 1

¶ 5 ACE's first assignment of error challenges the trial court's denial of its motion for new trial on grounds that the trial court should have imposed upon Columbia and Lloyds the burden to prove that ACE breached the notice provision of the policy at issue. Such burden, ACE argues, should have been a necessary element of the insurers' defense, which was based upon their assertion that ACE provided untimely notice of the Refuse Fuels claim. Appellant's Brief, p. 6. In reviewing a trial court's denial of a motion for a new trial, the standard of review for an appellate court is as follows:

[I]t is well-established law that, absent a clear abuse of discretion by the trial court, appellate courts must not interfere with the trial court's authority to grant or deny a new trial.

* * *

Thus, when analyzing a decision by a trial court to grant or deny a new trial, the proper standard of review, ultimately, is whether the trial court abused its discretion.

*Harman ex rel. Harman v. Borah,* 562 Pa. 455, 466–467, 756 A.2d 1116, 1122 (2000).

¶ 6 Moreover, our review must be tailored to a well-settled, two-part analysis:

We must review the court's alleged mistake and determine whether the court erred and, if so, whether the error resulted in prejudice necessitating a new trial. If the alleged mistake concerned an error of law, we will scrutinize for legal error. Once we determine whether an error occurred, we must then determine whether the trial court abused its discretion in ruling on the request for a new trial.

*Stalsitz v. Allentown Hosp.,* 814 A.2d 766, 771 (Pa.Super.2002) (citations omitted).

¶ 7 ACE alleges that the trial court erred as a matter of law in failing to impose upon Columbia and Lloyds the burden of proving, during the trial, that ACE actually breached the policy's separate notice of claim provision. In ACE's view, its timely initial reporting of the Refuse Fuels claim to Columbia and Lloyds established that the claim fell within the "coverage grant" of the policy, upon which basis the burden should have been shifted to Columbia and Lloyds to prove their asserted ground for a limitation of coverage (ACE's

alleged breach of the policy's specific notice provision). In support of this assertion, ACE relies upon *Miller v. Boston Insurance Co.,* 420 Pa. 566, 218 A.2d 275 (1966), which held that "[a] defense based on an exception or exclusion in a policy is an affirmative one, and the burden is cast upon the defendant to establish it." *Id.*

¶ 8 The trial court disagreed with ACE in that regard, holding that Columbia and Lloyds were not required to mount proof of ACE's breach of the policy notice provision. Trial Court Opinion, 2/8/07, pp. 3–4. By way of support, the trial court recited what it deemed to be a recognized rule that in a claims-made policy, notice is a condition precedent to coverage, and not a limitation of coverage. Trial Court Opinion, 2/8/07, p. 3. *See, e.g., Lexington Ins. Co. v. W. Pa. Hosp.,* 318 F.Supp.2d 270 (W.D.Pa.2004) (applying Pennsylvania law). We agree. ACE failed to establish that its compliance with only the general reporting requirements of the policy was sufficient to effectuate coverage such that its failure to comply with the policy's specific and heightened notice provisions was either excused or negated. As such, no need arose for the trial court to ·shift the burden of proof to the insurers, Appellees herein. We find that the trial court did not commit legal error in finding as it did, nor did it abuse its discretion in deciding that the insurers did not bear the burden of proof to establish ACE's breach of the notice provision that was in question at

trial. Thus, this assignment of error is without merit.

### Assignment of Error # 2

■ ¶ 9 ACE's second assignment of error similarly challenges the trial court's decision to relieve Columbia and Lloyds of the burden of proving that they suffered prejudice as a result of ACE's alleged breach of the notice provision that was in question at trial.[3] ACE argues that its compliance with the general reporting provisions of the policy should have led the trial court to require that Columbia and Lloyds prove prejudice under *Brakeman v. Potomac Insurance Co.,* 472 Pa. 66, 371 A.2d 193 (1977), where the Supreme Court of Pennsylvania held that:

> [W]here an insurance company seeks to be relieved of its obligations under a liability insurance policy on the ground of late notice, the insurance company will be required to prove that the notice provision was breached and that the breach resulted in prejudice to its position.

*Id.,* 472 Pa. at 76–77, 371 A.2d at 198.

¶ 10 The trial court rejected ACE's argument, concluding that *"Brakeman* involved an occurrence policy, not a claims made policy as in the case at bar." Trial Court Opinion, 2/8/07, p. 3. Furthermore, the trial court concluded that "Pennsylvania has not extended the *Brakeman* 'notice-prejudice' rule beyond the context of occurrence liability policies." Trial Court Opinion, 2/8/07, pp. 3–4. We agree. This

---

**3.** The trial court analyzed this issue in an unreported memorandum opinion that it had authored in response to cross-motions for summary judgment. *Ace Am. Ins. Co. v. Underwriters at Lloyds & Cos.,* 2005 WL 2100150 (Ct.Com.Pl.2005) (unpublished memorandum). Although the trial court's opinion suggests that ACE's failure to appeal that decision directly should render its arguments here waived, ACE has presented case law to the effect that its appeal herein from the entry of

final judgment in this matter subsumes prior interlocutory orders. *See K.H. v. J.R.,* 573 Pa. 481, 826 A.2d 863 (2003) ("[A] notice of appeal filed from the entry of judgment will be viewed as drawing into question any prior non-final orders that produced the judgment."). *See also Baker v. Cambridge Chase, Inc.,* 725 A.2d 757 (Pa.Super.1999). We agree. This issue is thus properly before this Court on this appeal.

issue received detailed treatment recently in the federal case of *Pizzini v. American International Specialty Lines Insurance Co.*, 210 F.Supp.2d 658 (E.D.Pa.2002) (applying Pennsylvania law), in which it was concluded that:

> In the absence of controlling Pennsylvania authority, the weight of existing case law leads me to conclude, as have the courts in this circuit, that *under Pennsylvania law the Brakeman "notice-prejudice" rule does not apply to "claims made policies."* Thus, an insurer providing liability coverage under a "claims made" policy need not show it was prejudiced by an insured's failure to provide timely notice of a claim in order to deny coverage on that ground.

*Id.*, 210 F.Supp.2d at 669–670 (Emphasis Added).

¶ 11 Until such time as the Supreme Court of Pennsylvania rules on this issue, we agree with this reasoning and decline herein to extend the *Brakeman* rule to claims-made insurance policies. Appellant asserts that its compliance with the general reporting requirements of the policy distinguishes this case from *Pizzini*, where the insureds neither reported nor noticed claims in a timely fashion. We conclude, however, that ACE's compliance with only the policy's general reporting requirement does not excuse its breach of the specific and heightened notice requirement of the E & O policy at issue here. Thus, we hold, in agreement with *Pizzini*, that in the "claims-made" context, if an insured has clearly breached the notice requirement, an insurer need not show prejudice to deny coverage. The trial court committed no error of law in deciding as such and, thus, it did not abuse its discretion in denying Appellant a new trial on this ground. Consequently, this assignment of error is without merit.

### *Assignment of Error # 3*

■ ¶ 12 ACE's third assignment of error alleges that the trial court erred in various of its rulings regarding the language of the policy's notice provision (quoted above at footnote # 1). ACE asserts error particularly in the trial court's: (1) finding that the provision was unambiguous and hence not subject to construction in favor of ACE as the insured, (2) deciding that ACE's conduct was to be judged objectively rather than subjectively, and (3) giving a misleading jury instruction on the subject. Trial Court Opinion, 2/8/07, pp. 5, 10–11. ACE also challenges the trial court's refusal to allow it to present extrinsic evidence concerning its understanding of the meaning and intent of the policy provisions in question. Appellant's Brief, p. 48. As we have noted above (in footnote # 3), these issues were decided on a motion for summary judgment that resulted in an unappealable interlocutory order. It is, thus, now ripe for decision by this Court. Upon our consideration of the rulings of the trial court below on these evidentiary issues, we conclude that the trial court correctly assessed and analyzed these questions and we adopt by reference its "memorandum opinion" thereupon, which held that:

> With respect to the issue of reasonableness, this court finds the Notice Provision to be unambiguous. Interpretation of an insurance contract is a matter of law and is to be performed by the court. Where the policy language is clear and unambiguous, as here, the court must give effect to that language. In such cases, neither oral testimony nor prior written agreements or other writings are admissible to explain or vary the terms of that contract. Based on the Policy language, it is clear that the requirement of "reasonableness" indicates that Ace's actions in evaluating and reporting claims must be judged objective-

ly and in accordance with that of a reasonable insurance carrier under similar circumstances.

*Ace Am. Ins. Co. v. Underwriters at Lloyds & Cos.*, 2005 WL 2100150 (Ct.Com. Pl., Phila.County, 2005) (unpublished memorandum). The trial court did not commit an error of law in so concluding and, thus, it did not abuse its discretion in denying Appellant's motion for new trial on this ground.

■ ¶ 13 ACE further contends that the trial court's instruction to the jury inappropriately emphasized language within the notice provision that could have influenced the jury's considerations regarding the notice provision's language that ACE "provide notice of all Claims to the Insurer as soon as practicable after such Claims first become known to the General Counsel or Risk Manager of the Principal Insured, but in no event later than ninety (90) days after the expiration of the Policy Period...." The court's instruction read as follows:

> [Y]ou may not ignore the language "as soon as practicable" that is contained in the contract. As a matter of law, that language has legal significance ... it is binding on their agreement. You can't just say "Oh, well, we don't like 'as soon as practicable.' We'll ignore it." I am telling you you can't ignore it. And I am instructing you not to ignore it.
> (N.T. Trial, 3/16/06, p. 173–174).

¶ 14 ACE alleges that this instruction by the court "improperly gave the jury the impression that the policy required notice as soon as practicable without regard to the knowledge of the Risk Manager/General Counsel as the event implicating the

notice requirement, or to any other portion of the Lloyds policy language." Appellant's Brief, p. 56.

¶ 15 The trial court responded on the merits that although it "specifically instructed the jury not to ignore the 'as soon as practicable' language[,] it is clear that the court implored the jury to consider all the Policy's language." Trial Court Opinion, 2/8/07, p. 10. The trial court noted further that it did so "in response to an objection by Columbia's counsel that was based upon ACE's counsel's 'mischaracterization' of the Policy language during closing arguments." [4] As a final matter, the trial court stated that ACE never properly objected on the record to that jury instruction and, as such, it has thus waived its ability to bring the issue up on appeal. Trial Court Opinion, 2/8/07, p. 11. We agree with the trial court as to both the merit s and the probable waiver. *See, e.g., McManamon v. Washko*, 906 A.2d 1259 (Pa.Super.2006) ("[O]ur review of the record indicates Appellants did not object either time the court gave these instructions. Thus, Appellants waived their challenge to the spoken jury instructions...."). This assignment of error is similarly without merit.

### Assignment of Error # 4

■ ¶ 16 ACE's fourth assignment of error alleges that the trial court committed prejudicial error when it precluded ACE from presenting evidence at the trial that (ACE believes) would have demonstrated that Columbia and Lloyds were estopped from asserting a "late notice" defense. ACE argues specifically that such evidence would have established that the prior con-

---

4. The purported "mischaracterization" by ACE's counsel appears to be his various attempts, during closing argument, to minimize the "as soon as practicable" language in the provision in favor of emphasizing the phrase concerning when ACE's Risk Manager or General Counsel acquired knowledge of a claim likely to exceed $4 million. (*See, e.g.,* N.T. Trial, 3/16/06, pp. 112, 168–170).

duct and prior expressed intentions of both Columbia and Lloyds, in their dealings with ACE, led ACE to believe that its conduct, in determining whether a claim against it was likely to exceed $4 million, was to be considered on a subjective, rather than objective, basis. Appellant's Brief, p. 59. ACE alleges that it reasonably and detrimentally relied upon such representations by Columbia and Lloyds in "deciding when and how to give notice of loss [to Columbia and Lloyds] pursuant to the notice provision". Moreover, ACE asserts that it could have proven such reliance had it been given the opportunity to present evidence on the matter. Appellant's Brief, p. 60. If so, ACE then reasons, Columbia and Lloyds would have been estopped from asserting that ACE's handling of notice in this matter, as an objective matter, was untimely.

¶ 17 The trial court concluded that ACE had not produced any legal support for this proposition and, thus, it believed that ACE had waived such issue on appeal. Trial Court Opinion, 2/8/07, p. 10. Nevertheless, the trial court's analysis in its memorandum opinion, as quoted above, did substantively and correctly address this issue before the trial. Since we find that the trial court did not err in deciding the notice provision to be unambiguous and also that ACE's conduct was subject to objective rather than subjective consideration, we are satisfied that the trial court did not abuse its discretion in precluding ACE from presenting evidence as to Columbia and ACE's prior conduct, dealings, or alleged intentions and understandings concerning the notice provision that is in question here. As such, the trial court did not abuse its discretion by denying Appellant's motion for new trial on this ground. This assignment of error is similarly without merit.

### Assignment of Error # 5

¶ 18 Appellant's fifth assignment of error asserts that the trial court committed prejudicial error when it precluded ACE from presenting evidence regarding purported admissions by Columbia and Lloyds as to the value of the Refuse Fuels claim, which ultimately exceeded $37 million. Appellant's Brief, pp. 6, 60–65. ACE argues that such evidence would have established that Columbia and Lloyds "themselves questioned whether the underlying loss was reasonably likely to exceed $4 million", which could have influenced the jury's decision on the reasonableness of ACE's belief that the claim was not likely to exceed $4 million. Appellant's Brief, p. 60. ACE suggests that these alleged admissions by Columbia and Lloyds should have been considered as voluntary admissions against interest, which are generally understood to be "the highest kind of evidence and ... entitled to great weight, it being fair to presume that a party would not say anything against his own interest unless it be true." Appellant's Brief, p. 61 (quoting Commonwealth v. Beaver, 317 Pa.Super. 88, 463 A.2d 1097, 1106, n. 9 (1983)).

¶ 19 In response to this assertion by ACE, the trial court referred to and incorporated by reference its pre-trial preclusion order of March 15, 2006, issued in anticipation of the trial on the coverage issue, which stated that:

With respect to the testimony which purports to constitute "admissions against interest made by the Defendants [Columbia and Lloyds] that are pertinent to the Notice Provision," or any other evidence relating to the parties conduct following July 27, 2000, such evidence is precluded. This court has previously ruled that "any documents or other evidence after July 27, 2000—when specific notice of the Refuse Fuels

claim was provided [by ACE to the insurers]—is irrelevant to and therefore inadmissible during the coverage phase of the trial."... Unless [ACE] can demonstrate that [Columbia's and/or Lloyds'] "admissions" were based upon the full disclosure of all information known to ACE at the time the alleged admission was made [by Columbia and/or Lloyds], such evidence is inadmissible, as it is not relevant to the issues currently being tried.

Trial Court Opinion, 2/8/07, p. 9. The trial court also noted that "ACE made no such demonstration at trial, therefore the evidence was never admitted." Trial Court Opinion, 2/8/07, p. 9.

¶ 20 ACE argues that the trial court's ruling, which precluded any evidence from after July 27, 2000, was in error because, in ACE's view, "[*w]hen* an admission is made has no bearing on its admissibility." Appellant's Brief, p. 64. We conclude, however, that the trial court correctly deduced that the proper time frame for the trial on coverage should not have extended beyond July 27, 2000, the date on which ACE provided the specific notice of the Refuse Fuels claim to Columbia and Lloyds. Such date was, we note, several years after the Refuse Fuels claim was first lodged against ACE, and more than one year after the June 30, 1999 deadline for ACE to provide timely notice to Columbia and Lloyds, within the terms of the E & O policy at issue here. As such, the trial court did not commit prejudicial error in precluding ACE's proffered evidence from any date after July 27, 2000, and, consequently, it did not abuse its discretion in denying Appellant's motion for new trial on this ground. This assignment of error is also without merit.

*Assignment of Error # 6*

■ ¶ 21 Appellant's sixth and final assignment of error alleges that the individual judge who conducted the trial on the coverage issue, but who was not the original judge in this litigation, erred in declaring moot and declining to enforce an April 13, 2004 order that was entered by the original judge. The April 13, 2004 order required that Lloyds produce certain allegedly privileged documents sought by ACE. In response, the trial court explained that the April 13, 2004 discovery order was limited to the issue of bad faith and did not extend to the issue of coverage, which was to be decided first; the issue of bad faith had been stayed pending the outcome of the trial on the coverage issue. Trial Court Opinion, 2/8/07, p. 6–7.

¶ 22 In explaining its resolution of this issue, the trial court referred first to its own order of February 14, 2006, which rejected a motion by ACE to stay the upcoming scheduled trial on the issue of coverage until the appeal of the April 13, 2004 discovery order became final.[5] Trial Court Opinion, 2/8/07, p. 6. This February 14, 2006 order held that the April 13, 2004 discovery order was essentially limited to the bad faith portion of the litigation. Trial Court Opinion, 2/8/07, p. 6. Despite this "clear ruling" by the court, however, ACE filed a motion for contempt against Lloyds for non-compliance with the April 13, 2004 order. Trial Court Opinion, 2/8/07, p. 6. The trial court denied ACE's motion for contempt on May 17, 2006, reiterating that the April 13, 2004 order addressed discovery "solely related to the bad faith portion of this bifurcated case ... a matter which was rendered moot by the defense verdict in the coverage phase." Trial Court Opin-

---

5. The substance of that appeal process does not appear to have been reported and is, thus, not available for individual citation.

ion, 2/8/07, p. 7. Furthermore, the trial court wrote: "[t]here was no allegation [by ACE] that the materials at issue contained evidence relating to the issue of notice or any other matters pertinent to the coverage phase." Trial Court Opinion, 2/8/07, p. 7.

¶ 23 ACE contends that the trial court's conclusion to limit the April 14, 2003 discovery order to the bad faith segment of the case was erroneous, and that this error prejudiced ACE's ability to prosecute its case on the coverage issue. Thus, ACE asserts, the grant of a new trial is required. ACE reasons that, as a matter of logic, the previous judge could not have intended that his order be limited to the bad faith portion of the case because the order was issued "after he had bifurcated the case and limited discovery to coverage." Appellant's Brief, p. 68. Furthermore, ACE states that "[i]f the discovery at issue pertained to bad faith, Judge Cohen would have denied the motion without prejudice, deferred ruling on the motion, or expressly made Lloyds' compliance with the order contingent upon a finding of coverage." Appellant's Brief, p. 68.

¶ 24 Lloyds and Columbia respond by asserting that the April 13, 2004 order would in no way have qualified the documents in question to be admitted into evidence during the trial on the coverage issue, as the order only allowed ACE's counsel to review the documents in anticipation of a full admissibility review prior to or during the bad faith phase of the litigation. Appellees' Brief, p. 45. Lloyds and Columbia also note that an unsuccessful mediation proceeding (not part of the record in this matter) resulted in the submission for review of all the disputed documents to the judge who presided over the trial of the coverage issue. Lloyds and Columbia argue that the judge's experience in actually reviewing the disputed

documents reinforces the conclusion that the judge's orders from February and May of 2006, which preceded the trial on coverage, clearly confirmed that the April 13, 2004 discovery order was limited to the bad faith portion of the litigation and not relevant to the coverage portion of the litigation. Appellees' Brief, pp. 45–46.

¶ 25 This is a somewhat perplexing issue that has required our review of all of the available documentation contained in the record. After such review, we conclude that ACE has not demonstrated that these documents had relevance to the coverage phase of this litigation. Nor has ACE demonstrated: (1) that it would necessarily have been entitled to these documents before the trial on coverage, (2) that these documents would have been admissible at the trial on coverage, or (3) that their absence prejudiced ACE's ability to prosecute its case on the coverage issue. We thus find no error as a matter of law in the trial court's decision not to enforce the April 13, 2004 discovery order with regard to the trial on coverage. This assignment of error is, thus, without merit and the trial court's final judgment, and order, as entered on October 17, 2006, is affirmed.

### ORDER OF SEPTEMBER 19, 2006

#### (Consolidated Appeal No. 3006 EDA 2006)

¶ 26 This appeal arises from the trial court's denial of Columbia's post-trial motion for sanctions, costs, and attorney fees. Our standard of review of issues concerning sanctions is one of abuse of discretion by the trial court. See, e.g., Judge Technical Servs., Inc. v. Clancy, 813 A.2d 879, (Pa.Super.2002).

### QUESTION ON APPEAL

¶ 27 Columbia presents the following question for our review:

1. Did the trial court err in failing to conduct a hearing with respect to Columbia Casualty Company's Post–Trial Motion for Sanctions, Attorney's Fees and Costs in order to resolve: (1) the factual disputes between the parties concerning the conduct of ACE American Insurance Company and its counsel; and (2) to determine whether violations of [the] Pennsylvania Rules of Professional Conduct took place?

Columbia's Brief, p. 4.

### DISCUSSION

¶ 28 Columbia argues that a hearing should have been held so that the trial court could be sufficiently informed as to "a continuing pattern of misconduct by ACE and Evans [ACE's trial counsel]," including instances where Mr. Evans purposefully misrepresented evidentiary matters to the jury. Columbia's Brief, p. 13. In Columbia's view, Mr. Evans' conduct was so egregious as to trigger 42 Pa.C.S.A. § 2503 [6], which provides for an award of attorney fees when another litigation participant engages in "dilatory, obdurate or vexatious conduct during the pendency of a matter", or when a participant's conduct "in commencing the matter or otherwise was arbitrary, vexatious or in bad faith." *See also Scalia v. Erie Ins. Exch.*, 878 A.2d 114 (Pa.Super.2005).

¶ 29 The trial court responded to Columbia's allegation by observing that its revocation of Mr. Evans' *pro hac vice* admission (which we shall address next) served as "an appropriate sanction under the circumstances." Trial Court Opinion, 2/8/07, p. 12. The trial court added that it had "observed ACE's counsel's conduct first-hand and did not need [a] hearing in order to evaluate post-trial." Trial Court Opinion, 2/8/07, p. 13. Ultimately, the trial court did not feel that, beyond revoking Mr. Evans' *pro hac vice* admission, this situation warranted a departure from the "American Rule", in which "parties to a litigation are responsible for their own fees unless otherwise provided by statutory authority, agreement of the parties or some other recognized exception." *See, e.g., Equibank v. Miller*, 422 Pa.Super. 240, 619 A.2d 336, 338 (1993).

¶ 30 We conclude that the trial court was well within its discretionary authority to deny Columbia's motion for sanctions and in doing so without convening an evidentiary hearing. Although we shall be remanding this matter for further proceedings regarding the revocation of Mr. Evans' *pro hac vice* admission, we shall not disturb the trial court's reasonable conclusion that Mr. Evans' conduct did not warrant either the imposition of sanctions or the award of attorneys' fees. *See, e.g., Berg v. Georgetown Builders, Inc.*, 822 A.2d 810 (Pa.Super.2003). Consequently, this assignment of error is without merit.

6. **§ 2503. Right of participants to receive counsel fees**
The following participants shall be entitled to a reasonable counsel fee as part of the taxable costs of the matter:
* * *
(6) Any participant who is awarded counsel fees as a sanction against another participant for violation of any general rule which expressly prescribes the award of counsel fees as a sanction for dilatory, obdurate or vexatious conduct during the pendency of any matter.

(7) Any participant who is awarded counsel fees as a sanction against another participant for dilatory, obdurate or vexatious conduct during the pendency of a matter.
* * *
(9) Any participant who is awarded counsel fees because the conduct of another party in commencing the matter or otherwise was arbitrary, vexatious or in bad faith.
(10) Any other participant in such circumstances as may be specified by statute heretofore or hereafter enacted.

## ORDER OF MARCH 21, 2006

### (Consolidated Appeal No. 3246 EDA 2006)

¶ 31 By order of January 17, 2002, J. Randolph Evans, Appellant herein, was admitted *pro hac vice* to the Bar of the Court of Common Pleas of Philadelphia County for the specific purpose of representing ACE in this litigation. Mr. Evans served as lead trial counsel for ACE during the March 6–17, 2006 trial, after which the jury returned a verdict that rejected ACE's claims. Thereafter, on March 21, 2006, the trial court issued an order *sua sponte*, without having held a hearing on the matter, in which it vacated its order of January 17, 2002 and revoked Mr. Evans' *pro hac vice* admission as counsel for ACE in this litigation.

### QUESTIONS ON APPEAL

¶ 32 This appeal followed,[7] in which Mr. Evans raises the following questions for our review:

1. Did the trial court err by revoking the admission *pro hac vice* of J. Randolph Evans where the record does not support such revocation, and Mr. Evans' conduct was proper and violated no rule of law, rule of court, or order?

2. Did the trial court err by revoking the admission *pro hac vice* of J. Randolph Evans, by denying Mr. Evans procedural due process, where, in advance of revocation, the trial court gave no notice that revocation was being considered, did not identify the objectionable conduct, did not give the specific reason why the conduct was objectionable, did not provide the standard by which the conduct would be judged, and did not give Mr. Evans any opportunity to be heard or respond?

Appellant's Brief, p. 5.

### DISCUSSION

¶ 33 Case law regarding this particular issue is not extensive, but we agree with the parties that the standard of review is one of abuse of discretion, which standard has been adopted in the courts of other states as well as in the United States Court of Appeals for the Third Circuit. *See, e.g., Forrest v. Beloit Corp.*, 424 F.3d 344 (3d Cir.2005) ("Due to his superior vantage point, the trial judge is entrusted with wide discretion in matters relating to the conduct of counsel during trial."); *see also Speer v. Donfeld*, 193 Ariz. 28, 969 P.2d 193 (Ct.App.1998).

■ ¶ 34 For purposes of this review, we shall first address Mr. Evans' second assignment of error, which alleges that the trial court abused its discretion by revoking his previously-granted *pro hac vice* admission without first providing him with even a modicum of procedural due process. Appellant's Brief, p. 37. Mr. Evans asserts that in the absence of controlling Pennsylvania case law, courts nationwide, including the United States Court of Appeals for the Third Circuit, have agreed in principle that before the revocation of an attorney's pro hac vice admission, which could threaten the attorney's reputation and livelihood as well as the client's inter-

---

**7.** The trial court ordered Mr. Evans' client, ACE, to prepare and file a Concise Statement of Matters Complained of on Appeal pursuant to Pa.R.A.P. 1925(b). In that statement, as item # 10, ACE included its intention to appeal the March 21, 2006 order revoking Mr. Evans' *pro hac vice* admission, but ACE has not pursued this issue in its brief. Mr. Evans, however, has appealed this issue independently, with his own separate counsel, and has briefed this Court on the two issues he presents. The record contains no indication that the trial court ordered Mr. Evans to prepare and file a separate 1925(b) Statement, so we conclude that his assignments of error are properly before this Court and that no violation of 1925(b) has occurred.

ests and choice of counsel, a court should provide the attorney with: (1) prior notice of the basis upon which revocation is being considered and (2) an opportunity to be heard. Appellant's Brief, pp. 37–55.

¶ 35 The trial court found, however, that based upon its own observations during the course of the trial, Mr. Evans' "closing argument manifested a lack of familiarity with the decorum, candor and fairness expected of attorneys practicing in a Pennsylvania courtroom … such conduct included racial pandering, misstatements of the law, circumvention of the rulings of the court, attempts to unfairly portray the defendants' actions as racially motivated, improper attempts to personalize the case, and other unprofessional conduct. Trial Court Opinion, 2/8/07, p. 11. The trial court added that an additional hearing was not required because it "observed ACE and its counsel's conduct firsthand and did not need [a] hearing in order to evaluate [the issue] post-trial." Trial Court Opinion, 2/8/07, pp. 12–13. We do not necessarily agree with this conclusion of the trial court.

¶ 36 We note at the outset that a judge has significant authority to "police" the proceedings in his or her own courtroom, as this Court explained in *Commonwealth v. Sojourner*, 268 Pa.Super. 472, 408 A.2d 1100 (1978):

> Misconduct in the courtroom is a serious matter. The onus is on the trial judge to avert or cure it: (I)t is the duty of the court to see that trial proceedings are conducted in an orderly manner and any disturbance or outbursts should be checked immediately by the court [on] its own motion.

*Id.*, 408 A.2d at 1105.

¶ 37 Moreover, the question of whether or not a lawyer's conduct transgresses the bounds of legitimate advocacy is "primarily for the discretion of the trial judge, and an appellate court will not interfere with the exercise of this discretion, unless the record manifests that it was clearly abused." *Abrams v. Phila. Suburban Transp. Co.*, 438 Pa. 115, 119, 264 A.2d 702, 704 (1970).

¶ 38 However, with all due respect to the trial court's observations (which we do not question at all), we are convinced that, in this particular instance, Mr. Evans should have been advised in advance that his *pro hac vice* admission was in peril of revocation and should also have been given an opportunity to be heard in advance of any such revocation. The trial transcript contains a number of exchanges between the trial judge and Mr. Evans, during any of which a proper warning could have been issued to Mr. Evans to the effect that his pro hac vice admission was in peril of revocation. Mr. Evans could then have either altered his conduct or explained his strategy and reasons for conducting himself as he did to the trial court. Concerns for judicial efficiency and resources would not have been taxed by such steps on the part of the trial court, and the trial court's discretionary authority with respect to Mr. Evans' pro hac vice admission would not have been compromised or diminished in any way whatsoever.

¶ 39 We refer specifically to Pennsylvania Rule of Civil Procedure 1012.1, which has been recently adopted (as of September 1, 2007) by the Supreme Court of Pennsylvania, and which supplements Pennsylvania Bar Admission Rule 301.[8] Although Pa.R.C.P. 1012.1 was not in effect at the time of these trial proceedings,

8. Rule 301
   **Admission *Pro Hac Vice***

(a) General Rule. The provisions of Subchapter B of these rules (relating to admission

the spirit that it expresses is most instructive with regard to the present matter. It states that:

> The court may revoke an admission *pro hac vice sua sponte* or upon the motion of a party, if it determines, *after a hearing* or *other meaningful opportunity to respond,* that continued admission *pro hac vice* is inappropriate or inadvisable.

Pa.R.C.P. 1012.1(f) (Emphasis Added).

¶ 40 We find Pa.R.C.P. 1012.1 to be a clear and persuasive expression by the Supreme Court of Pennsylvania that the courts of this Commonwealth should extend some degree of procedural due process to those attorneys who are admitted to practice law in Pennsylvania on a *pro hac vice* basis. Such intent manifests an equitable concern that *pro hac vice* attorneys will not suffer any lasting negative effects on either their livelihood or reputation without having had an opportunity to be heard; such a process also protects

clients who may wish to maintain the counsel of their choice. We reiterate our awareness that Pa.R.C.P. 1012.1 was not in effect at the pertinent time involved in this case. We nevertheless adopt its spirit as an equitable consideration in the present circumstances and, therefore, we vacate the trial court's March 21, 2006 order and remand this matter for proceedings consistent with this Opinion.[9] As we have so directed, we need not address Mr. Evans' initial assignment of error at this time.

¶ 41 Entry of final judgment of October 17, 2006 affirmed. Order of September 19, 2006 affirmed. Order of March 21, 2006 vacated. Remanded for further proceedings consistent with this Opinion, such to be limited to the vacated Order of March 21, 2006.

to the bar generally) do not apply to motions for admission *pro hac vice.* An attorney, barrister or advocate who is qualified to practice in the courts of another state or of a foreign jurisdiction may be specially admitted to the bar of this Commonwealth for purposes limited to a particular matter. An attorney, barrister or advocate admitted *pro hac vice* in a matter shall not thereby be authorized to act as attorney of record in such matter.
(b) Procedure. The general requirements for applicants seeking admission *pro hac vice* are:
(1) Applicants shall provide such information and pay such fee to the Pennsylvania Interest on Lawyer Trust Account (IOLTA) Board as is required by the regulations concerning pro hac vice admission that have been adopted by the IOLTA Board and approved by the Court.
(2) *Pro hac vice* admissions shall be only on motion of a member of the bar of this Commonwealth. Except as otherwise prescribed by general rule, such motion shall be signed by the member of the bar, shall recite all relevant facts, including, if applicable, those averments required by regulations adopted by the IOLTA Board, and shall be filed with the clerk of the court in which or with the magisterial district judge before which the matter is

pending at least three days prior to the appearance before the court or magisterial district judge by the attorney, barrister, or advocate seeking pro hac vice admission. Any court or magisterial district judge shall grant such a motion unless good cause for denial shall appear, which shall include failure to comply with applicable regulations promulgated by the IOLTA Board.
(3) The oath shall not be required.

9. We are aware, as well, that the Supreme Court of the United States spoke on this issue in *Leis v. Flynt,* 439 U.S. 438, 99 S.Ct. 698, 58 L.Ed.2d 717 (1979), in which it held that the right of an out-of-state attorney to appear *pro hac vice* in a state court does not fall among those interests protected by the due process clause of the Fourteenth Amendment of the United States Constitution. However, in light of Pa.R.C.P. 1012.1, we believe that once an attorney has been granted admission on a *pro hac vice* basis, such admission cannot be stripped without some modicum of procedural due process having been afforded, specifically, a basic degree of notice and an opportunity to be heard.