J-A22005-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| WILLIAM H. HENSLER JR., WHOLESALE MINE SUPPLY, L.P., WSAJT PROPERTIES, L.P. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| BECKER/WHOLESALE MINE SUPPLY, LLC, BECKER GLOBAL-AMERICA, INC. (AKA/FKA/SUCCESSOR-IN-INTEREST TO BECKER MINING AMERICA, INC.), BECKER MINING SYSTEMS, A.G., GREGORY A. SANDERS, FRANZ BECKER, WOLFGANG WEGNER, AND MAX BRINCKMANN | : | No. 293 WDA 2023 |
| _____ | : | |
| | : | |
| BECKER/WHOLESALE MINE SUPPLY, LLC AND BECKER GLOBAL-AMERICA, INC. | : | |
| | : | |
| v. | : | |
| | : | |
| WILLIAM H. HENSLER JR., SUSAN J. HENSLER, WHOLESALE MINE SUPPLY, L.P., COMTROL CORP., ALAN J. QUINN, JOSEPH A. DIBRIDGE, AND HENSLER COMMUNICATIONS CONSULTANTS, L.P. D/B/A/ HC GLOBAL, AND COMTROL-WEST, LLC | : | |
| | : | |
| APPEAL OF: ALAN J. QUINN, COMTROL CORPORATION, AND COMTROL-WEST. LLC | : | |

Appeal from the Order Entered February 17, 2023
In the Court of Common Pleas of Westmoreland County Civil Division at
No(s): 5219

BEFORE:  BOWES, J., OLSON, J., and KING, J.

MEMORANDUM BY BOWES, J.:             **FILED: November 15, 2023**

Alan J. Quinn, Comtrol Corporation ("Comtrol"), and Comtrol-West, LLC (collectively, the "Quinn Parties") appeal from the order granting the motion to compel and for sanctions filed by Becker/Wholesale Mine Supply, LLC and Becker Global America, Inc. (collectively, the "Becker Parties"). We reverse and remand for further proceedings.

By way of background, this matter involves complex cross-cases filed by the Quinn Parties, the Becker Parties, and several other non-participants on appeal. After a lengthy, consolidated non-jury trial, the trial court found the Quinn Parties liable for damages as to several of the counts raised in the complaints. While post-trial motions were pending, the Becker Parties filed a motion for preliminary injunctive relief, seeking an order prohibiting the Quinn Parties from dissipating their assets and requesting appointment of a receiver to monitor Comtrol's financial status.

After negotiation, the parties resolved the motion by filing a consent order to appoint a limited receiver for Comtrol ("Consent Injunction Order"). Relevant to this appeal, paragraphs 6 and 7 of the Consent Injunction Order outlined the duties of Comtrol concerning the receiver. Paragraph 6 stated in whole as follows:

> By the seventh day of each month, Comtrol shall send the receiver electronically financial and accounting data for the immediate prior month, including without limitation producing the QuickBooks backup file for Comtrol (i.e. the .qbb file) or any equivalent file for other accounting software utilized by Comtrol, to enable the receiver to (i) analyze Comtrol's sales, expenses, overhead, net profit, gross profit, liabilities and equity and (ii) develop income statements, balance sheets and cash flow

statements. In addition, Comtrol will be required to produce to the receiver on a monthly basis any contract/agreement entered into by Comtrol during the prior month, and, on an annual basis, produce Comtrol's federal and state tax returns. The receiver will be compensated by [the Becker Parties].

Consent Injunction Order, 12/30/22, at ¶ 6 (cleaned up). Paragraph 7 of the Consent Injunction Order provided that, "To the extent the receiver has questions regarding data he/she is reviewing, the receiver shall be permitted to communicate with, and ask questions to, Alan Quinn, President of Comtrol, and Mr. Quinn shall promptly respond to the questions truthfully and accurately." *Id*. at ¶ 7.

Following entry of the Consent Injunction Order, the court appointed Thomas Pratt of Schneider Downs & Co., Inc. as the limited receiver. Mr. Pratt then requested certain historical documents from Comtrol, including annual financial statements, tax returns, key employee compensation, and sales information, from years 2019 through 2022. Mr. Pratt indicated that he needed this information to provide context for his evaluation and analysis of the accounting data received by Comtrol. The Quinn Parties refused to provide the bulk of the documents sought, asserting that they were beyond the scope of the Consent Injunction Order since they related to matters preceding the receiver's appointment.

The Becker Parties consequently filed a motion to compel and for sanctions. The Quinn Parties filed an opposition, and the court entertained oral argument. On February 17, 2023, the trial court granted the motion in whole, directing the Quinn Parties to provide the documentation requested by

the limited receiver and imposing sanctions on the Quinn Parties and their counsel, finding that they "lacked a good faith basis to oppose the motion." Order of Court, 2/17/23, at ¶ 2.

The Quinn Parties filed a timely appeal. Both the Quinn Parties and the trial court complied with Pa.R.A.P. 1925. The Quinn Parties raise the following two issues on appeal:

I. Whether the trial court abused its discretion and committed an error of law by improperly modifying and expanding the scope of the Quinn Parties' and Becker Parties' Consent Injunction Order contrary to its plain language and the parties' intent?

II. Whether the trial court abused its discretion and committed an error of law by imposing sanctions against the Quinn Parties and their counsel based upon its erroneous conclusion that they "lacked a good faith basis" in opposing the Becker Parties' motion to compel and for sanctions and where the mandatory procedures of Pa.R.C.P. 1023.2 were not followed?

Quinn Parties' brief at 4 (cleaned up).

Before addressing the merits of this appeal, we first consider the appealability of the order in question, as it impacts this Court's jurisdiction. *See Calabretta v. Guidi Homes, Inc.*, 241 A.3d 436, 441 n.6 (Pa.Super. 2020) (stating that "[b]ecause we lack jurisdiction over an unappealable order, it is incumbent on us to determine, *sua sponte* when necessary, whether the appeal is taken from an appealable order." (cleaned up)). On June 30, 2023, this Court issued a rule for the Quinn Parties to show cause why the order appealed from either satisfied the three-prong test of a collateral order set forth in Pa.R.A.P. 313(b), or was appealable as an order

modifying an injunction pursuant to Rule 311(a)(4).  The Quinn Parties filed a timely response, asserting that the order was appealable under both sections in question.  The rule was discharged, and the parties were advised that this issue may be revisited by this panel.

Rule 311 provides in pertinent part as follows:

(a)  **General Rule**.  An appeal may be taken as of right and without reference to Pa.R.A.P. 341(c) from the following types of orders:

. . . .

(4)  *Injunctions*.  An order that grants or denies, modifies or refuses to modify, continues or refuses to continue, or dissolves or refuses to dissolve an injunction unless the order was entered:

(i)  Pursuant to [certain provisions of the Divorce Code]; or

(ii)  After a trial but before entry of the final order. Such order is immediately appealable, however, if the order enjoins conduct previously permitted or mandated or permits or **mandates conduct not previously mandated** or permitted, and is effective before entry of the final order.

Pa.R.A.P. 311(a) (emphasis added).

This Court has stated that pursuant to subsection (ii) above, "an appeal may be taken from an order that (because a final judgment has not yet been entered) is not otherwise appealable . . . if (1) the order enjoins conduct previously allowed or allows conduct previously prohibited, and (2) the injunction takes effect before entry of a final judgment."  ***Thomas A. Robinson Family Ltd. P'ship v. Bioni***, 178 A.3d 839, 847 (Pa.Super. 2017).  The clear purpose of this subsection to the rule "is to permit an immediate

- 5 -

appeal if an immediately-effective permanent injunction makes such a change to the status quo that the aggrieved party needs quick appellate recourse without incurring delays from post-trial proceedings in the trial court." *Id*.

In their response to the rule to show cause, the Quinn Parties asserted that the order in question satisfies Rule 311 above and is appealable because it (1) modified the scope of the Consent Injunction Order, (2) mandated new conduct by compelling the Quinn Parties to produce documents to a limited receiver, and (3) was entered and made effective before entry of the final order. *See* Quinn Parties' response to rule to show cause at 7-12. Upon review, we agree that the order is appealable pursuant to 311(a)(4)(ii). It clearly "mandates conduct not previously mandated" from the Quinn Parties, and there is no dispute that the order was effective before entry of a final order, since it was entered while post-trial motions were still pending before the court. Pa.R.A.P. 311(a)(4)(ii); *see also Thomas A. Robinson Family Ltd. P'ship*, *supra* at 846. Moreover, we determine that the order is appealable insofar as it imposes sanctions on the Quinn Parties and their attorneys. *See Stewart v. Foxworth*, 65 A.3d 468, 471 (Pa.Super. 2013) (stating that "[a]n order imposing sanctions, including one that imposes sanctions on an attorney, is considered a final order and is therefore appealable.").

Having determined that this appeal is properly before us, we now turn to the merits. The Quinn Parties' first contention is that the trial court erred by expanding the obligations of the parties pursuant to the Consent Injunction

Order.  *See* Quinn Parties' brief at 15-22.  A consent order "is a contract which has been given judicial sanction, and, as such, it must be interpreted in accordance with the general principles governing the interpretation of all contracts."  *Com. ex rel. Kane v. UPMC*, 129 A.3d 441, 463 (Pa. 2015) (citation omitted).

This Court has stated thusly concerning contract disputes:

[W]hen interpreting the language of a contract, the intention of the parties is a paramount consideration.  In determining the intent of the parties to a written agreement, the court looks to what they have clearly expressed, for the law does not assume that the language of the contract was chosen carelessly.

When interpreting agreements containing clear and unambiguous terms, we need only examine the writing itself to give effect to the parties' intent.  The language of a contract is unambiguous if we can determine its meaning without any guide other than a knowledge of the simple facts on which, from the nature of the language in general, its meaning depends.  When terms in a contract are not defined, we must construe the words in accordance with their natural, plain, and ordinary meaning.  As the parties have the right to make their own contract, we will not modify the plain meaning of the words under the guise of interpretation or give the language a construction in conflict with the accepted meaning of the language used.

On the contrary, the terms of a contract are ambiguous if the terms are reasonably or fairly susceptible of different constructions and are capable of being understood in more than one sense.  Additionally, we will determine that the language is ambiguous if the language is obscure in meaning through indefiniteness of expression or has a double meaning.  Where the language of the contract is ambiguous, the provision is to be construed against the drafter.

*Riverview Carpet & Flooring, Inc. v. Presbyterian SeniorCare*, 299 A.3d 937, 983-84 (Pa.Super. 2023) (citation omitted).

The Quinn Parties argue that the trial court ignored the plain language of the Consent Injunction Order and expanded the scope of the limited receivership. *See* Quinn Parties' brief at 18-20. They focus primarily on paragraph 6 of the order, which they assert clearly delineates an obligation to produce only particular accounting and financial documents to the receiver relating to the preceding month. *Id*. at 18-19. The Quinn Parties aver that this language imposes solely "forward looking" duties on Comtrol, which do not include producing historical documents. *Id*. at 18. As such, they contend that the court was in error by compelling them to produce the financial statements, tax returns, and other documents from 2019 through 2022 identified in the court's order.

In rejecting this claim, the trial court looked to the purpose of the agreement, determining that the goal was "to allow Comtrol to continue operating its business while preventing the dissipation of assets to preserve the value of the company at the time of the judgments in which it was implicated." Trial Court Opinion, 5/3/23, at 3. Based on this, the court stated that "the receiver must have some baseline information to assess any changes" to Comtrol's business value. *Id*. Therefore, it rejected the Quinn Parties' position that the Consent Injunction Order was "forward looking," concluding that the objective of the agreement would be rendered moot because "there would be no cognizable way to assess whether assets have been dissipated or not." *Id*.

For their part, the Becker Parties likewise assert that the trial court did not err in compelling production of the documents sought by the limited receiver. *See* Becker Parties' brief at 24-32. Particularly, they cite to paragraph 7 of the Consent Injunction Order, which allows the receiver to ask questions to Comtrol's president, Mr. Quinn, about any documents distributed, and mandates that Mr. Quinn provide prompt and truthful answers. *Id*. at 26. The Becker Parties interpret this language as setting no limitation on the questions that the limited receiver may ask or the form of information he may request. *Id*. Additionally, they argue that when this language is construed within the context of the order as a whole, it is plainly necessary for the receiver to obtain this information so that he can monitor Comtrol's obligations to continue operating "in the ordinary course of business" pursuant to the Consent Injunction Order. *Id*. at 26-27. Similar to the trial court, the Becker Parties contend that the only reasonable way to interpret the Consent Injunction Order is to permit the limited receiver to acquire the historical documents in question. *Id*. at 29-32.

After careful review of the certified record and the applicable law, we conclude the court erred in compelling the Quinn Parties to produce the documents requested by the limited receiver. Initially, we determine that the terms of the Consent Injunction Order are clear and unambiguous on their face, and therefore we need not look beyond the writing itself to determine the intent of the parties. *See Riverview*, *supra* at 983. As the Quinn Parties highlight, paragraph 6 of the Consent Injunction Order provides that by the

seventh day of a given month, Comtrol "shall send the receiver electronically financial and accounting data **for the immediate prior month**[.]" Consent Injunction Order, 12/30/22, at ¶ 6 (emphasis added). Nowhere does it require that Comtrol produce any documents prior to the month of the limited receiver's appointment, let alone ones dating back to 2019. The language employed by the parties clearly expressed an intent to give a narrower scope of powers to the limited receiver.

Moreover, we are not persuaded by the Becker Parties' reliance on paragraph 7 of the Consent Injunction Order to support its position that Comtrol was required to produce historic documents from 2019 through 2022. That provision permitted the limited receiver to **ask questions** of Mr. Quinn "regarding data he/she is reviewing" and mandated that he respond truthfully, but it did not impose any duty to produce documents other than those identified in the agreement. *Id*. at ¶ 7. This process is wholly consistent with the parties' negotiated agreement for appointment of a limited receiver, and this interpretation does not render the purpose of the Consent Injunction Order moot, as the trial court concluded.

In short, by compelling production of documents not encompassed by the plain language of the Consent Injunction Order, the trial court expanded the scope of the agreement under the guise of interpretation. We cannot countenance this result when the law necessitates a presumption that the written words used by these sophisticated parties were chosen with care. **See**

*Riverview*, *supra* at 983. Based on the above, the order granting the motion to compel must be reversed.

The Quinn Parties next contend that, among other reasons, the court erred in granting sanctions against them and their counsel when it determined that they lacked a good faith basis in opposing the Becker Parties' motion to compel. *See* Quinn Parties' brief at 38-42. Concerning sanctions, our standard of review "is one of abuse of discretion by the trial court." *ACE American Ins. Co. v. Underwriters at Lloyds and Companies*, 939 A.2d 935, 945 (Pa.Super. 2007). We note that "[a]n abuse of discretion is not merely an error of judgment. It requires a showing of manifest unreasonableness, partiality, ill-will, or such lack of support as to be clearly erroneous." *SLT Holdings, LLC v. Mitch-Well Energy, Inc.*, 217 A.3d 1248, 1251 (Pa.Super. 2019).

Here, the trial court ascertained that sanctions were appropriate because it had "ample basis to find that the Quinn [P]arties had no good faith basis for opposing the motion to compel." Trial Court Opinion, 5/3/23, at 5. As such, it concluded that the sanctions were allowable pursuant to Pa.R.C.P. 1023.1(c) and (d), where parties "knowingly raise, in bad faith, frivolous claims which have no reasonable possibility of success, for the purpose of harassing, obstructing or delaying the opposing party." *Id*. (discussing Pa.R.C.P. 1023.1).

As discussed in detail above, the Quinn Parties not only had a good faith basis in which to oppose the motion to compel, but their claim in opposition

warranted denial of that motion. Accordingly, we conclude that the court abused its discretion by imposing sanctions against the Quinn Parties and their counsel when its decision rested upon an incorrect finding. Therefore, the court's order granting sanctions against the Quinn Parties cannot stand.[1]

Order reversed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: <u>11/15/2023</u>

---

[1] Since we grant relief to the Quinn Parties for the reasons stated *supra*, we do not address their alternative argument concerning the Becker Parties' alleged failure to properly request sanctions in accordance with Pa.R.C.P. 1023.2. **See** Quinn Parties' brief at 31-38.